**U.S. District Judge Barbara J. Rothstein**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| D.S. by and through her next friend TARA URS; D.Y. by and through his next friend JULIE KELLOGG-MORTENSEN; H.A. by and through his next friend KRISTEN BISHOPP; and DISABILITY RIGHTS WASHINGTON, a nonprofit membership organization for the federally mandated Protection and Advocacy Systems,<br><br>Plaintiffs,<br><br>v.<br><br>WASHINGTON STATE DEPARTMENT OF CHILDREN, YOUTH, AND FAMILIES; and ROSS HUNTER, in his official capacity as Secretary of the Washington State Department of Children, Youth, and Families,<br><br>Defendants. | No. 2:21-cv-000113<br><br><br><br>PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTIVE RELIEF |

## I.  INTRODUCTION

Tonight, and every night for the foreseeable future, children in Washington's foster care system run the risk of being relegated to what is called "after hours."  This is not a formal program governed by policies or minimum guidelines.  Instead, this is the "crazy, bad idea" that far too many children in the custody of Washington's Department of Children, Youth, and Families (DCYF) experience when the system designed to care for them fails to provide them

PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTIVE RELIEF - 1
No. 2:21-cv-000113

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521 ・ Fax: (206) 957-0729

with a placement.[1]  DCYF may instead provide these children a one-night hotel stay or a cot on the floor at a DCYF office, or even force them to sleep in a social worker's car.  DCYF calls these nights without a proper home "placement exceptions," but these "exceptions," as well as one-night stays in emergency foster homes that last from bedtime to early morning, are happening with alarming frequency, and disproportionately to children with disabilities.

The widespread use of placement exceptions and one-night stays indicates a systemic failure, but DCYF's unwillingness to provide even basic protections for the "after hours" children makes this harm even more intolerable and destabilizing, particularly for children with underlying behavioral health or developmental disabilities.  Children experiencing placement exceptions and one-night stays spend their days sitting in a DCYF office, waiting to find out where they will sleep that night.  They have no predictable routines, structure, supports, or even access to adequate nutrition.  When situations inevitably escalate, the rotating "after hours" staff often lack skills to support these traumatized children, who are being triggered by their constant state of uncertainty.

Plaintiffs ultimately seek to reform the broken system that has precipitated this placement crisis, but the daily harm children are currently experiencing due to DCYF's "after hours" practices can and should be alleviated while this case is litigated.  Plaintiffs seek a preliminary injunction pursuant to Federal Rule of Civil Procedure 65 requiring Defendants to implement urgent, targeted modifications to DCYF's "after hours" practices to mitigate the harm to Plaintiffs in the interim, including: (a) placing youth experiencing multiple-night hotel stays in

---

[1] Nina Shapiro, *'Crazy bad idea': Top Washington Official Reacts to 'Alarming' Rise in Children in State Care Sent to Hotels*, SEATTLE TIMES (Dec. 16, 2019, 6:00 AM), https://www.seattletimes.com/seattle-news/report-reveals-alarming-increase-in-number-of-children-in-state-care-sent-to-hotels-its-a-crazy-bad-idea-top-official-agrees (hereinafter "Shapiro, *'Crazy bad idea'*").

PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTIVE RELIEF - 2
No. 2:21-cv-000113

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521 ⋅ Fax: (206) 957-0729

the same hotel and the same room from night to night, and permitting them to leave their belongings in their rooms during the day; (b) ensuring that no children in DCYF custody spend the night in cars or offices; (c) ensuring that youth experiencing placement exceptions or one-night stays have access to healthy meals and snacks throughout the day; (d) providing adequate support and resources, including dedicated office space, staffing, and transportation, for youth experiencing placement exceptions or one-night stays to engage in school and other developmentally appropriate activities; (e) providing training for "after hours" staff in trauma-informed care, crisis response, de-escalation, and basic first aid; (f) providing individualized accommodations and crisis response planning to support youth experiencing placement exceptions and one-night stays; and (g) developing and disseminating policies and procedures formalizing the requirements in (a)-(f) above.[2]

The Court should grant this preliminary injunctive relief pursuant to Federal Rule of Civil Procedure 65 because Plaintiffs are likely to succeed on the merits of their claims, Plaintiffs are likely to suffer irreparable harm in the absence of the requested relief, the balance of equities tips in Plaintiffs' favor, and the requested injunction is in the public interest. *See Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

## II. STATEMENT OF FACTS

**A.   DCYF Routinely Houses Foster Children with Disabilities in Hotel Rooms, Offices, and One-Night Stays.**

When DCYF lacks an appropriate placement, it uses placement exceptions – hotel rooms, DCYF offices, and cars – and one-night stays as emergency housing alternatives for children.

---

[2] Plaintiffs request that (a) and (b) be immediately implemented, and (c)-(g) be implemented within fifteen days of the Court order.

PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTIVE RELIEF - 3
No. 2:21-cv-000113

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521 ・ Fax: (206) 957-0729

The Office of the Family and Children's Ombuds ("OFCO") has tracked DCYF's use of placement exceptions since 2015, and in its 2020 Annual Report, describes increasing use of this practice, with no signs of slowing down. Kas Decl. ¶ 3, Exh. 1 at 13, fig. 1. OFCO's data for September 2020 through March 2021 reflects 1,263 placement exceptions, suggesting that DCYF is on track to exceed its prior annual records. *Id.* ¶ 4, Exh. 2. These numbers do not include children in one-night stays, which OFCO opined in giving testimony to the Washington State House Children, Youth and Families Committee are "equally disruptive." *Work Session: Hotel Stays for Youth Involved with Child Welfare, before the H. Comm. on Children, Youth & Families*, 2021 Leg., 67th Sess. (Wash. 2021), https://www.tvw.org/watch/?eventID=2021011326, at 6:10 (statement of Patrick Dowd, Director Ombuds, OFCO) (hereinafter "*H. Comm. Work Session*"); *see also* Kas Decl. ¶ 5, Exh. 3 (DCYF statement admitting overnight emergency placements do "not provide children with the stability they need").

      Plaintiff Disability Rights Washington (DRW), in its capacity as the federally mandated statewide Protection and Advocacy System for the State of Washington, has identified numerous constituents – youth with disabilities – who have experienced DCYF placement exceptions and one-night stays. Eaton Decl. ¶¶ 3-5. Under its federal mandates, DRW conducts monitoring, investigations, and advocacy on behalf of its constituents, including all Washingtonians with mental health, developmental, and physical disabilities. *Id.* ¶ 3. In July of 2020, DRW investigated exceptional placements and one-night stays pursuant to its federal mandates and requested from DCYF a list of all foster children who (1) have a mental health diagnosis, learning disability, or developmental disability, and (2) have experienced placement exceptions in DCYF offices or hotels, placement at a quarantine center, or placement in a short-term single-night foster home since March 1, 2020. *Id.* ¶ 4, Exh. 2. DCYF provided lists that identified

PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTIVE RELIEF - 4
No. 2:21-cv-000113

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521 • Fax: (206) 957-0729

eighty-eight (88) children who met the requested criteria. *Id.* ¶ 5. Named Plaintiff D.S. is among the DRW constituents that DCYF identified, and she is currently living in hotels and offices along with other children, several of whom may also have disabilities. *Id.* ¶ 5; D.S. Decl. ¶¶ 4, 14, 18-19; *see also* Answer ¶¶ 54, 56, ECF No. 23 (admitting D.S. has mental health diagnoses and has been subjected to temporary stays including at hotels during the last year). Other DRW constituents in DCYF custody, including Named Plaintiffs D.Y and H.A., have likewise endured placement exceptions, and remain imperiled by the risk that if their current placements disrupt, DCYF will once again subject them to these conditions. Bishopp Decl. ¶¶ 3-4, 8; Kellogg-Mortensen Decl. ¶¶ 3-4; *see also* Answer ¶¶ 49, 59 (admitting D.Y. and H.A. have experienced temporary stays including in DCYF offices or hotels).

The foster children who suffer extensive periods without a foster or group home placement are most often constituents of DRW who have behavioral health or developmental disabilities. *See* Kas Decl. ¶ 3, Exh. 1 at 18 (reporting over 70% of children with twenty or more exceptional placements had mental health needs); *id*. ¶ 6, Exh. 4 (DCYF June 12, 2020 memorandum stating that "there are children with acute needs or behaviors who have necessitated extensive hotel stays while awaiting beds in residential placements."). As DCYF Secretary Hunter explained in testimony before the House Children, Youth and Families Committee, many of the children who have experienced the most placement exceptions are children who, like D.Y. and H.A., were coming from Behavioral Rehabilitation Services (BRS) group homes that primarily serve DRW constituents, as well as hospitals that house youth with developmental disabilities or provide mental health treatment. *H. Comm. Work Session* at 18:01-18:59. Additionally, in DCYF's 2020-2024 Child and Family Services Plan (hereinafter "2020-2024 CFSP"), DCYF acknowledges that "[c]hildren or youth who need more intensive

| PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTIVE RELIEF - 5<br>No. 2:21-cv-000113 | Disability Rights Washington<br>315 5th Avenue South, Suite 850<br>Seattle, Washington 98104<br>(206) 324-1521 ・ Fax: (206) 957-0729 |
|---|---|

behavioral supports are perhaps the subgroup with the greatest unmet need for appropriate licensed placements," and "***at least 94%*** of hotel stays were attributable to the need for behavioral or mental health supports and the lack of licensed capacity to provide those supports." Kas Decl. ¶ 7, Exh. 5 at 28 (emphasis added).

**B.    DCYF's "After Hours" Practices are Harmful.**

OFCO's 2020 report described extraordinarily destabilizing conditions for children experiencing placement exceptions. The report describes how children leave the hotel or office they have slept in with all of their belongings "with the expectation they will not be returning to the same room, or perhaps even the same hotel," how they typically eat improvised meals consisting of fast food or food from grocery or convenience stores, and how they may even sleep in cars. Kas Decl. ¶ 3, Exh. 1 at 23. Children in one-night stays spend their sleeping hours at an emergency foster home, but otherwise spend their waking hours in the same way as children in exceptional placements. *Id.* ¶ 5, Exh. 3 (DCYF statement that children are "dropped off close to bedtime and picked up by the caseworker before breakfast").

Declarations recounting DRW's constituents' individual experiences similarly detail the ways DCYF has failed to mitigate the intolerable and unpredictable conditions of its "after hours" services. First, DCYF does not guarantee children the right to sleep in an appropriate setting and has forced children to spend sleepless nights in offices and even cars. For example, DCYF "after hours" staff made D.S. spend the night at DCYF offices as a consequence for not following rules and forced A.I. to spend the night on an office floor for declining a one-night stay where she did not feel safe. D.S. Decl. ¶¶ 5-6, 25; A.I. Decl. ¶¶ 9-10. H.A. spent more nights at the office than a hotel during the weeks he had no placement. Bishopp Decl. ¶¶ 6-7. In addition, echoing OFCO's findings, constituents of DRW testify that when they spend the night

PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTIVE RELIEF - 6
No. 2:21-cv-000113

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521 ∙ Fax: (206) 957-0729

at a hotel, office, car, or one-night stay, they do not have access to adequate nutrition, and instead live on snacks, fast food, and microwave meals. D.S. Decl. ¶ 24; A.I. Decl. ¶ 6. Lastly, DCYF does not meet each youth's individual needs, requiring children with mental health conditions to conform to abnormal conditions without accommodations, and providing few or no opportunities for age-appropriate structured activities. A.I. describes having nothing to do and no one to talk to all day, stating, "[n]obody made me feel like I was cared for or wanted." A.I. Decl. ¶ 5. H.A. was "incredibly bored" and became "dark and hopeless" during the weeks he spent living in DCYF offices. Bishopp Decl. ¶ 5. D.S. has not received the individualized accommodations and supports she needs to engage in school or manage her anxiety. D.S. Decl. ¶¶ 20-23. When youth struggle to cope with these traumatizing circumstances, DCYF "after hours" staff do not demonstrate understanding of the children's behaviors or how to provide adequate support to keep children safe. D.S. Decl. ¶¶ 13-19 (describing several incidents in which staff failed to respond to youth in crisis); Farina Decl. ¶¶ 23-24, 31; *see also* Bishopp Decl. ¶ 6.

According to Plaintiffs' expert, Anne Farina, Ph.D., LCSW, DCYF's practices "are unsafe and harmful to children in foster care, particularly for those with behavioral health conditions and developmental disabilities." Farina Decl. ¶ 4. Based on her review of OFCO reports, as well as declarations and DCYF's own case notes regarding DRW's constituents who have been in multiple placement exceptions and one-night stays, she concludes that DCYF's practices are unsafe, and harm children's physical health, as well as their cognitive, behavioral, emotional, and social functioning. *Id.* ¶¶ 9-19. In particular, she notes that services to adequately meet children's needs are especially crucial for "children with physical and mental health issues" who are "at risk for worse long term outcomes." *Id.* ¶ 17. She warns that DCYF's failures to provide for safety, stability, structure, adequate nutrition, and opportunities to develop

PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTIVE RELIEF - 7
No. 2:21-cv-000113

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington 98104
(206) 324-1521 ・ Fax: (206) 957-0729

socialization skills are placing children at risk of injury, physical and mental health problems, and "being limited to future placements that may be more restrictive environments." *Id*. ¶¶ 10-19. She further concludes that Plaintiffs' proposed changes "would have an immediate impact on the safety and well-being of children." *Id.* ¶¶ 35-36.

**C.     DCYF has Failed to Appropriately Redress its Destabilizing Practices.**

DCYF has long recognized that its use of placement exceptions and one-night stays is a "crisis." *See* Kas Decl. ¶ 7, Exh. 5 at 28.  DCYF acknowledged that "[t]he use of hotels and short-term placements creates instability that can escalate negative behaviors making it more difficult to find a placement able to meet the child's needs." *Id.* at 30.  Indeed, Defendant DCYF Secretary Ross Hunter admitted in December 2019 that having children in foster care sleep in hotel rooms and offices is "an enormous problem," and that "[r]epeated stays in hotels is a crazy, bad idea." Shapiro, '*Crazy bad idea*.'  More recently, DCYF social worker Selena Deer testified before the House Children, Youth and Families Committee about the "detrimental" impact on what she described as the "most vulnerable" foster children, explaining: "It creates instability, lack of consistency and expectations, trust issues, and it intensifies their mental and behavioral health.  These children end up feeling hopeless, inadequate and unwanted." *H. Comm. Work Session* at 23:43-24:42.  She concludes that the message foster children receive is "we do not care enough." *Id.* at 29:30-29:35.  At this same hearing, Secretary Hunter stated that his department had been "excoriated" by the OFCO 2020 report, but agreed this was "incredibly appropriate." *Id.* at 13:35-13:57.

DCYF, however, has ignored recommendations to mitigate the harm children in "after hours" are suffering.  In its 2020 report, OFCO "recommend[ed] that, at a minimum, DCYF amend their current practice regarding placement exceptions and allow youth to stay in the same

PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTIVE RELIEF - 8
No. 2:21-cv-000113

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521 ᛫ Fax: (206) 957-0729

hotel room from night to night." Kas Decl. ¶ 3, Exh. 1 at 23. OFCO further suggested that DCYF should "ensure that children do not sleep in cars;" "establish office kitchen facilities stocked with healthy foods;" and "create dedicated office space and [provide] adequate staffing for children out of placement to engage in school work and activities." *Id.* Yet, in his testimony before the House committee as well as his response to the OFCO report, Secretary Hunter's solution has focused largely on expanding inpatient and congregate beds, with only limited plans to slightly increase single family therapeutic foster homes over the next year and no indication of any plans to implement OFCO's urgent recommendations in the meantime. *H. Comm. Work Session* at 19:05-20:30; *See also* Kas Decl. ¶ 8, Exh. 6. Because the harmful "after hours" conditions are continuing unabated, Plaintiffs seek urgent Court intervention.

### III. LEGAL STANDARD FOR ISSUANCE OF A PRELIMINARY INJUNCTION

A plaintiff seeking preliminary relief under Federal Rule of Civil Procedure 65 must establish "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The Ninth Circuit applies a "sliding scale" approach to balancing these elements; "a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Thus, when the likelihood of grave irreparable injury is palpable and the balance of equities tips sharply in plaintiffs' favor, the plaintiffs need only "demonstrate a fair chance of success on the merits or questions serious enough to require litigation." *Arc of Cal. v. Douglas*, 757 F.3d 975, 993-94 (9th Cir. 2014) (internal quotations and citation omitted). Further, Plaintiffs must show likelihood of success on the merits of only one of their claims. *Rodde v. Bonta*, 357 F.3d 988, 998 n.13 (9th Cir. 2004).

PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTIVE RELIEF - 9
No. 2:21-cv-000113

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington 98104
(206) 324-1521 ・ Fax: (206) 957-0729

IV. **PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR CLAIMS.**

**D.    DCYF's "After Hours" Practices Violate the Fourteenth Amendment.**

DCYF is abdicating its responsibility under the Fourteenth Amendment to the U.S. Constitution to provide children in its care with "reasonable safety and minimally adequate care and treatment appropriate to the age and circumstances of the child." *See B.K. v. Snyder*, 922 F.3d 957, 968 (9th Cir. 2017) (internal citation omitted). To prevail on their substantive due process claim, Plaintiffs must show that "state officials acted with such deliberate indifference to the plaintiffs' liberty interest that their actions 'shock the conscience.'" *Id.* This standard requires proof of : "(1) an objectively substantial risk of harm, and (2) the official's subjective awareness of that risk." *Id.* (quoting *Tamas v. Dep't of Soc. & Health Servs.*, 630 F.3d 833, 844-45 (9th Cir. 2010)). "The second part may be proven by showing (1) that the official was aware of facts from which an inference of risk may be drawn and that the official made that inference, (2) that the official was aware of facts from which an inference of risk may be drawn and that any reasonable official would have been compelled to draw that inference, or (3) that the risk of harm is obvious." *Id.* The Ninth Circuit has also held that courts may enforce the Fourteenth Amendment "when there is a substantial departure from accepted professional judgment or when there has been no exercise of professional judgment at all." *Sharp v. Weston*, 233 F.3d 1166, 1171 (9th Cir. 2000).

Here, Plaintiffs can establish an objectively substantial risk of harm to the physical, psychological, and emotional health of children forced to live in an unpredictable cycle of hotel rooms, offices, cars, and one-night stays in foster care. As illustrated by the declarations attached hereto, DCYF is even further compounding the harm and trauma that foster children have suffered by failing to meet children's most basic needs for sufficient nutrition, a suitable

PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTIVE RELIEF - 10
No. 2:21-cv-000113

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521 ᛫ Fax: (206) 957-0729

place to sleep, and adequate care and supervision. D.S. Decl. ¶¶ 4-24; A.I. Decl. ¶¶ 5-10; *see also* Farina Decl. ¶¶ 20-22 (explaining how the "trauma-informed" approach that foster children need "is not even possible without the presence of safety and stability").

Plaintiffs will also show Defendant DCYF Secretary Ross Hunter's subjective awareness of the harm his agency is inflicting. Indeed, Defendants have reviewed OFCO's reports and have publicly acknowledged that subjecting children to repeated hotel stays as well as one-night stays is harmful and destabilizing. *See* Shapiro, '*Crazy bad idea*'; *H. Comm. Work Session* at 13:35; *see also* Kas Decl. ¶¶ 5, 7, Exhs. 3, 5 at 30. Yet, in spite of DCYF's subjective knowledge that its practices are egregiously harmful, DCYF has continued this "crazy, bad idea," while also refusing to institute changes that would mitigate the harm it is inflicting.

**E.     DCYF's Practices Violate Plaintiffs' Rights Under Title II of the ADA and Section 504 of the Rehabilitation Act.**

Although Plaintiffs need only to show likelihood of success on the merits for one claim, Plaintiffs are also likely to successfully demonstrate that DCYF's "after hours" practices further violate both Title II of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act, which each require DCYF to provide children with disabilities equal opportunities to benefit from its child welfare program.[3] To establish a violation of either statute, Plaintiffs must show that: (1) they are persons with disabilities; (2) they are "otherwise qualified" for DCYF's services; (3) they were excluded from participation in, denied the benefits of, or subjected to discrimination in DCYF's program or services by reason of their disabilities (or "solely by reason of" their disabilities for the Section 504 claim); and (4) DCYF is a public

---

[3] *See Zukle v. Regents of Univ. of Cal.*, 166 F.3d 1041, 1045 n.11 (9th Cir. 1999) ("There is no significant difference in analysis of the rights and obligations created by the ADA and the Rehabilitation Act. Thus, courts have applied the same analysis to claims brought under both statutes." (internal citations omitted)).

PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTIVE RELIEF - 11
No. 2:21-cv-000113

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521  •  Fax: (206) 957-0729

entity (for the ADA claim) and receives federal financial assistance (for the Rehabilitation Act claim). *See Zukle v. Regents of Univ. of Cal.*, 166 F.3d 1041, 1045 (9th Cir. 1999).

Plaintiffs meet each of these requirements. Named Plaintiffs, as well as other DRW constituents in DCYF custody, are children with disabilities who are qualified to receive services from DCYF, a state entity that receives federal funding. Answer ¶¶ 16, 70, 115 (admitting receipt of federal funding). DCYF discriminates against children with disabilities by providing less effective services and using methods of administration that have the effect of defeating or substantially impairing the accomplishment of the objectives of DCYF's program with respect to individuals with disabilities and by failing to make necessary reasonable modifications to their policies, practices, and procedures. 28 C.F.R. § 35.130(b)(1)(iii), (3)(ii), (7); 45 C.F.R. § 84.4(b)(1)(iii), (4). Exceptional placements and one-night stays, which are most often suffered by children with exceptional needs, constitute less effective services and methods of administration that defeat DCYF's core purpose to protect and promote the rights of children to "basic nurturing," as well as "a safe, stable, and permanent home." WASH. REV. CODE § 13.34.020; *see also* Kas Decl. ¶ 7, Exh. 5 at 28 (94% of hotel stays are attributable to behavioral and mental health needs and "lack of licensed capacity"); Farina Decl. ¶ 18 (finding increased risk of placement in "more restrictive environments"). Furthermore, the failure to provide safe and stable conditions to support trauma-informed care by the "after hours" staff is particularly detrimental to children with disabilities, who are at even greater risk of suffering worse long term outcomes. *See id.* ¶¶ 17-22.

DCYF's proposed solution for children like H.A. and D.S. has been to attempt to place them in group homes and expand the capacity of these settings for other disabled children. Kellogg-Mortensen Decl. ¶ 3; Bishopp Decl. ¶ 8; *see also* Answer ¶ 50; *H. Comm Work Session*

PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTIVE RELIEF - 12
No. 2:21-cv-000113

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521 ・ Fax: (206) 957-0729

at 19:05-21:03 (Defendant Secretary Hunter's testimony that DCYF has been increasing group home "BRS" beds and will continue to use out-of-state institutions). This approach is not only ineffective for many children, but contravenes statutory mandates under the ADA and Section 504 to administer services, programs, and activities in the least restrictive and most integrated setting appropriate to the needs of children with disabilities. *M.R. v. Dreyfus*, 697 F.3d 706, 734 (9th Cir. 2012) ("[A] plaintiff need only show that the challenged state action creates a serious risk of institutionalization."); 28 C.F.R. § 35.130(d); 45 C.F.R. § 84.4(b)(2); *see also* Bishopp Decl. ¶ 8. For children, the "most integrated setting appropriate" is in "family homes," yet DCYF's internal recommendations and plans for addressing its placement crisis bend towards more inpatient and group care. *See A. H. R. v. Wash. State Health Care Auth.*, 469 F. Supp. 3d 1018, 1045 (W.D. Wash. 2016); *see also* Kas Decl. ¶ 8, Exh. 6.

**F.     DRW has Standing to Seek Preliminary Injunctive Relief for its Constituents.**

Lastly, DRW satisfies all the elements of associational standing to seek relief on behalf of its constituents. DRW can show that its constituents have standing to sue in their own right; the interests it seeks to protect are germane to the organization's purpose; and neither the claims nor the injunctive relief sought require the participation of individual constituents in the lawsuit. *See Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977) (laying out associational standing requirements). As in *Oregon Advocacy Center v. Mink*, 322 F.3d 1101, 1110 (9th Cir. 2003), where the Ninth Circuit found that protection and advocacy systems' constituents "are the functional equivalent of members for purposes of associational standing," Plaintiff DRW is the statewide protection and advocacy system designated by the Governor to serve Washingtonians with disabilities. Eaton Decl. ¶ 3.

PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTIVE RELIEF - 13
No. 2:21-cv-000113

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521 ᐧ Fax: (206) 957-0729

Here, D.S. has a mental health diagnosis and attests to the numerous ways she is being injured by Defendants' conduct. D.S. Decl. ¶¶ 2-26; s*ee also* Answer ¶ 54. Because she and other DRW constituents are suffering and will suffer under DCYF's "after hours" conditions, DRW has associational standing to seek preliminary injunctive relief on their behalf. *See K.M. v. Regence Blueshield*, No. 13-cv-1214-RAJ, 2014 WL 801204, at *7 (W.D. Wash. Feb. 27, 2014) (granting a preliminary injunction upon concluding that DRW's constituents "possess enough indicia of membership to satisfy the purposes of associational standing"); *see also Ezell v. City of Chicago*, 651 F.3d 684, 696 (7th Cir. 2011) (plaintiff Second Amendment advocacy membership associations entitled to preliminary injunction barring enforcement of city ordinance); *Cal. Trucking Ass'n v. Becerra*, 433 F. Supp. 3d 1154, 1162 (S.D. Cal. 2020) (motor carrier association had standing to seek preliminary injunction on behalf of its members).

## V. DCYF'S PRACTICES ARE LIKELY TO CAUSE IRREPARABLE INJURY ABSENT INJUNCTIVE RELIEF.

Plaintiffs meet their burden to show that irreparable injury is likely absent injunctive relief. *See Winter*, 555 U.S. at 22; *see also Small v. Avanti Heath Sys., LLC*, 661 F.3d 1180, 1191 (9th Cir. 2011) ("while 'likely' is a higher threshold than 'possible,' the [plaintiff] need not prove that irreparable harm is certain or even nearly certain"). "It is well established that the deprivation of constitutional rights unquestionably constitutes irreparable injury." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (internal quotation omitted). Emotional and psychological harm arising from a violation of disability rights law similarly meets the irreparable injury requirement in the context of a preliminary injunction. *Chalk v. Orange Cty. Superintendent of Schs.*, 840 F.2d 701, 710 (9th Cir. 1988).

PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTIVE RELIEF - 14
No. 2:21-cv-000113

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521 ᛫ Fax: (206) 957-0729

Children with disabilities in DCYF custody, all constituents of DRW, are currently being harmed by the extraordinary instability caused by DCYF's "after hours" practices. Farina Decl. ¶ 35. The anxiety, instability, and confusion caused by not knowing where they will be sleeping is exacerbated by the associated disruptions in education, lack of safety, lack of healthy food, and the chaotic environment devoid of individualized supports and crisis response planning. *See* D.S. Decl. ¶¶ 2, 26 (describing "chaos and uncertainty" and being "filled with fear and anxiety"); A.I. Decl. ¶ 12 ("I don't think any kids should have to live the way I did."); Farina Decl. ¶¶ 9-22.

## VI. THE BALANCE OF THE EQUITIES FAVORS A PRELIMINARY INJUNCTION.

When ruling on a preliminary injunction, "a court must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Arc of Cal.*, 757 F.3d at 991 (quoting *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 542 (1987)). The Ninth Circuit has had "little difficulty concluding that the balance of hardships tips decidedly in plaintiffs' favor" when, as here, it is "[f]aced with . . . a conflict between financial concerns and preventable human suffering." *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983); *see also M.R.*, 697 F.3d at 737-38 ("[T]he balance of hardship favors beneficiaries of public assistance who may be forced to do without needed medical services over a state concerned with conserving scarce resources."); *R.G. v. Koller*, 415 F. Supp. 2d 1129, 1162 (D. Haw. 2006) (finding the "administrative inconvenience" of ensuring a safe environment for children in a state institution outweighed by the harm of children being subjected to harassment and abuse); *McNearney v. Wash. Dep't of Corr.*, No. 11-cv-5930 RBL/KLS, 2012 WL 3545267, at *15 (W.D. Wash. June 15, 2012) ("the Ninth Circuit expects lower courts to protect physical harm to an individual over monetary costs to government entities").

PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTIVE RELIEF - 15
No. 2:21-cv-000113

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington 98104
(206) 324-1521 ᐧ Fax: (206) 957-0729

### VII. GRANTING RELIEF IS IN THE PUBLIC INTEREST.

"The public interest inquiry primarily addresses impact on non-parties rather than parties." *Sammartano v. First Judicial Dist. Court.*, 303 F.3d 959, 974 (9th Cir. 2002). "Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution." *Rodriguez v. Robbins*, 715 F.3d 1127, 1146 (9th Cir. 2013) (internal quotations omitted). Similarly, when Congress enacted the ADA it "demonstrated its view that the public has an interest in ensuring the eradication of discrimination on the basis of disabilities", and that "[t]his public interest is served by requiring entities to take steps to 'assure equality of opportunity' for people with disabilities." *Enyart v. Nat'l Conference of Bar Exam'rs, Inc.*, 630 F.3d 1153, 1167 (9th Cir. 2011) (*quoting* 42 U.S.C. § 12101(a)(8)). Thus, the public interest supports granting the requested preliminary injunction.

### VIII. CONCLUSION

On April 2, 2021, Plaintiffs asked Defendants to resolve this matter before filing this motion and offered to meet and confer on April 7 and 8, 2021, but the parties were not able to reach agreement. Because all four factors favor a preliminary injunction, the Court should grant Plaintiffs' requested relief.

DATED: April 12, 2021

Respectfully submitted,

**DISABILITY RIGHTS WASHINGTON**

*/s/ Susan Kas*
Susan Kas, WSBA # 36592
315 5th Avenue South, Suite 850
Seattle, WA 98104
Tel: (206) 324-1521
Fax: (206) 957-0729
Email: susank@dr-wa.org

PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTIVE RELIEF - 16
No. 2:21-cv-000113

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521 ・ Fax: (206) 957-0729

**CARNEY GILLESPIE PLLP**

*/s/ Christopher Carney*
Christopher Carney, WSBA #30325
600 1st Ave, Suite LL08
Seattle, WA 98104
Tel: (206) 445-0212
Fax: (206) 238-9987
Email: christopher.carney@carneygillespie.com

**NATIONAL CENTER FOR YOUTH LAW**

*/s/ Leecia Welch*
Leecia Welch, WSBA #26590
Poonam Juneja (admitted *pro hac vice*)
CA Bar ID No. 300848
Freya Pitts (admitted *pro hac vice*)
CA Bar ID No. 295878
Jean Strout (admitted *pro hac vice*)
CA Bar ID No. 804338
1212 Broadway, Suite 600
Oakland, CA 94612
Tel: (510) 835-8098
Fax: (510) 835-8099
Email: lwelch@youthlaw.org

**ATTORNEYS FOR PLAINTIFFS**

PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTIVE RELIEF - 17
No. 2:21-cv-000113

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington   98104
(206) 324-1521 ・ Fax: (206) 957-0729

**CERTIFICATE OF SERVICE**

I hereby certify that on April 12, 2021, I caused to be electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| Daniel Judge | danielj@atg.wa.gov |
| William McGinty | WilliamM1@atg.wa.gov |
| James Richardson | james.richardsoniii@atg.wa.gov |

I certify under penalty of perjury under the laws of the state of Washington that the foregoing is true and correct.

DATED this 12th day of April, 2021.

*s/Mona Rennie*_____
Mona Rennie, Legal Assistant
Disability Rights Washington

PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTIVE RELIEF - 18
No. 2:21-cv-000113

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521 ・ Fax: (206) 957-0729