1

2

3   **U.S. District Judge Barbara J. Rothstein**

4

5

6

7   UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT <u>SEATTLE</u>

8

9

10   D.S. by and through her next friend     CASE NO. 2:21-cv-000113
TARA URS; D.Y. by and through his
11   next friend JULIE KELLOGG-            **AGREEMENT REGARDING**
MORTENSEN; H.A. by and through       **DISCOVERY OF**
his next friend KRISTEN BISHOPP;     **ELECTRONICALLY STORED**
12   and DISABILITY RIGHTS                **INFORMATION AND ORDER**
WASHINGTON, a nonprofit
13   membership organization for the
federally mandated Protection and
14   Advocacy Systems,

15               Plaintiffs,

16        v.

17   WASHINGTON STATE
DEPARTMENT OF CHILDREN,
18   YOUTH, AND FAMILIES; and ROSS
HUNTER, in his official capacity as
19   Secretary of the Washington State
Department of Children, Youth, and
Families,

20               Defendants.

21

22        The parties hereby stipulate to the following provisions regarding the discovery of

23   electronically stored information ("ESI") in this matter:

24

**A.      General Principles**

1.      An attorney's zealous representation of a client is not compromised by conducting discovery in a cooperative manner. The failure of counsel or the parties to litigation to cooperate in facilitating and reasonably limiting discovery requests and responses raises litigation costs and contributes to the risk of sanctions.

2.      As provided in LCR 26(f), the proportionality standard set forth in Fed. R. Civ. P. 26(b)(1) must be applied in each case when formulating a discovery plan. To further the application of the proportionality standard in discovery, requests for production of ESI and related responses should be reasonably targeted, clear, and as specific as possible.

**B.      ESI Disclosures**

Within 30 days of entry of this Order, or at a later time if agreed to by the parties, each party shall disclose:

1.      <u>Custodians / End Users.</u> The ten custodians or end users most likely to have discoverable ESI in their possession, custody, or control. The custodians or end users shall be identified by name, title, connection to the instant litigation, and the type of the information under the custodian or end user's control and shall include, for each named Plaintiff, at least one end user with firsthand knowledge of each Plaintiff (e.g., an assigned casework or caseworker's manager).

2.      <u>Non-custodial Data Sources.</u> A list of non-custodial data sources (*e.g.*, shared drives, servers), if any, likely to contain discoverable ESI.

3.      <u>Third-Party Data Sources.</u> A list of third-party data sources, if any, likely to contain discoverable ESI (*e.g.*, third-party email providers, mobile device providers, cloud

storage) and, for each such source, the extent to which a party is (or is not) able to preserve information stored in the third-party data source.

4.     <u>Inaccessible Data.</u> A list of data sources, if any, likely to contain discoverable ESI (by type, date, custodian, electronic system or other criteria sufficient to specifically identify the data source) that a party asserts is not reasonably accessible under Fed. R. Civ. P. 26(b)(2)(B).

**C.     ESI Discovery Procedures**

1.     <u>On-site inspection of electronic media.</u> Such an inspection shall not be required absent a demonstration by the requesting party of specific need and good cause or by agreement of the parties.

2.     <u>Search methodology.</u> The parties shall timely confer to attempt to reach agreement on appropriate search terms and queries, file type and date restrictions, data sources (including custodians), and other appropriate computer- or technology-aided methodologies, before any such effort is undertaken. The parties shall continue to cooperate in revising the appropriateness of the search methodology.

a.     Prior to running searches:

i.     The producing party shall disclose the data sources (including custodians), any file type and date restrictions, and any other methodology that it proposes to use to locate ESI likely to contain responsive and discoverable information.

ii.     The parties will exchange proposed search terms and queries and cooperate in good faith to reach agreement.

iii.     The producing party may provide unique hit counts for each proposed search term and query.

iv.     The parties will meet and confer in good faith about the producing party's proposed data sources (including custodians), any file type and date restrictions, and any other methodology that it proposes to use to locate ESI likely to contain responsive and discoverable information, as well as about the search terms and queries proposed by the propounding party.

v.     The following provisions apply to search terms / queries of the requesting party.  Focused terms and queries should be employed; broad terms or queries, such as product and company names, generally should be avoided.  A conjunctive combination of multiple words or phrases (*e.g.*, "computer" and "system") narrows the search and shall count as a single search term. A disjunctive combination of multiple words or phrases (*e.g.*, "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word.  The producing party may identify each search term or query returning overbroad results demonstrating the overbroad results and a counter proposal correcting the overbroad search or query.

b.     After production:  Within 21 days of the producing party notifying the receiving party that it has substantially completed the production of documents responsive to a request, the receiving party may request no more than 10 additional search terms or queries.  The immediately preceding section (Section C(2)(a)(v)) applies.

c.     Upon reasonable request and to the extent it is not unduly burdensome, a party shall disclose information relating to network design, the types of databases, database dictionaries, the access control list and security access logs and rights of individuals to access the system and specific files and applications, the ESI document retention policy, organizational

1  chart for information systems personnel, or the backup and systems recovery routines,

2  including, but not limited to, tape rotation and destruction/overwrite policy.

3      3.      <u>Format.</u>

4          a.      ESI will be produced to the requesting party with searchable text, in a

5  format to be decided between the parties. Acceptable formats include, but are not limited to, native

6  files, single-page Group IV TIFFs or JPGs with load files for e-discovery software that includes

7  metadata fields identifying natural document breaks and also includes document-level companion

8  OCR and/or extracted text files.

9          b.      Unless otherwise agreed to by the parties, files that are not easily converted

10  to image format, such as spreadsheet, database, audio, video, and drawing files, will be produced

11  in native format.  When a native file exists, parties agree that they will produce the native file,

12  and not a PDF in lieu of the native file.

13          c.      Each document image file shall be named with a unique number (Bates

14  Number). File names should not be more than twenty characters long or contain spaces. When a

15  text-searchable image file is produced, the producing party must preserve the integrity of the

16  underlying ESI, *i.e.*, the original formatting, the metadata (as noted below) and, where applicable,

17  the revision history.

18          d.      If a document is more than one page, the unitization of the document and

19  any attachments and/or affixed notes shall be maintained as they existed in the original document.

20          e.      The parties shall produce their information in the following format: single-

21  page images of at least 300 dpi resolution and associated multi-page text files containing extracted

22  text or with appropriate software load files containing all information required by the litigation

23  support system used by the receiving party.  Page size shall be 8.5 x 11 inches, unless in the

24

25  48431120.2 AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY
   STORED INFORMATION AND ORDER                                    PAGE - 5
26  (Case No. 2:21-CV-000113)

1    reasonable judgment of the producing party, a particular item requires a different page size. Each

2    image file will use the Bates number of the page as its unique file name. Original document

3    orientation as displayed in the native file should be maintained in the TIFF image (i.e., portrait to

4    portrait and landscape to landscape).

5           f.      The full text of each electronic document shall be extracted ("Extracted

6    Text") and produced in a single, multipage text file containing all of the text for that item, not one

7    text file per page. The Extracted Text shall be provided in searchable ASCII text format (or

8    Unicode text format if the text is in a foreign language) and shall be named with a unique Bates

9    Number (*e.g.*, the unique Bates Number of the first page of the corresponding production version

10   of the document followed by its file extension).  The parties shall make reasonable efforts to

11   extract the text of each ESI item directly from the ESI native file.  The parties will make

12   reasonable efforts to provide searchable OCR text for any redacted files.

13          g.      Parent-child relationships for all embedded ESI documents (e.g., the

14   association between an attachment and its parent email, or a spreadsheet embedded within a word

15   processing document), must be preserved by assigning sequential Bates numbers to all items

16   within the parent-child group, and identifying those Bates numbers in the relevant ESI metadata

17   and coding fields. For example, if a party is producing an email with embedded attachments, the

18   attachments must be processed and assigned Bates numbers in sequential order, following

19   consecutively behind the parent email.  Moreover, parent-child relationships must be included in

20   the metadata as described in Section C(6) below.

21          h.      If an original document contains color text, markings or graphics, and the

22   receiving party believes it is necessary to view such document in its original color to understand

23   its full meaning or content, then the receiving party may request that the document be produced

24

in color format. The producing party shall then reproduce such document(s) and/or ESI in color JPEG format, or in native format.

        i.    If a particular document has a confidentiality designation, the designation shall be stamped on the face of all images pertaining to such document, in the lower left-hand corner of the document, or as close thereto as possible while preserving the underlying image. If the receiving party believes that a confidentiality designation obscures the content of a document, then the receiving party may request that the document be produced with the confidentiality designation in a different position. No party may attach to any filing or any correspondence addressed to the Court, or any adverse or third party, or submit as an exhibit at a deposition or any other judicial proceeding, a copy (whether electronic or otherwise) of any native format document produced by any party without ensuring that the corresponding Bates number and confidentiality legend, as designated by the producing party, appears on the document.

    4.    <u>De-duplication.</u> The parties may de-duplicate their ESI production across custodian and non-custodial data sources after disclosure to the requesting party, and the duplicate custodian information removed during the de-duplication process tracked in a duplicate/other custodian field in the database load file.

    5.    <u>Email Threading.</u>  The parties may use analytics technology to identify email threads and need only produce the unique most inclusive copy and related family members and may exclude lesser inclusive copies.  Upon reasonable request, the producing party will produce a less inclusive copy.

    6.    <u>Metadata fields.</u> If the requesting party seeks metadata, the parties agree that only the following metadata fields need be produced, and only to the extent it is reasonably accessible and non-privileged: document type; custodian and duplicate custodians (or storage location if no

1  custodian); author/from; recipient/to, cc and bcc; title/subject; email subject; file name; file size;

2  file extension; file path; date and time created; sent, modified/or date received; hash value; Begin

3  Bates number; End Bates number; Begin Family; End Family   The list of metadata type is

4  intended to be flexible and may be changed by agreement of the parties, particularly in light of

5  advances and changes in technology, vendor, and business practices.

6        7.    <u>Hard-Copy Documents.</u> If the parties elect to produce hard-copy documents in an

7  electronic format, the production of hard-copy documents will include a cross-reference file that

8  indicates document breaks and sets forth the custodian or custodian/location associated with each

9  produced document.  The parties will utilize reasonable best efforts to ensure that paper records

10  for a particular custodian or department level custodian, which are included in a single production,

11  are produced in consecutive Bates stamp order.  Hard-copy documents will be scanned using

12  Optical Character Recognition technology and searchable ASCII text files will be produced (or

13  Unicode text format if the text is in a foreign language), unless the producing party can show that

14  the cost would outweigh the usefulness of scanning (for example, when the condition of the paper

15  is not conducive to scanning and will not result in accurate or reasonably useable/searchable ESI).

16  Each file will be named with a unique Bates Number (*e.g.*, the unique Bates Number of the first

17  page of the corresponding production version of the document followed by its file extension).

18  Where necessary and practicable, hard copy documents in color will be scanned in color to ensure

19  full information is communicated in the scanned copy.  Where a Document or group of

20  Documents has an identification spine, "post-it note," or any other label, the information on the

21  label shall be scanned and produced to the extent practicable.

22  **D.    Preservation of ESI**

23

24

The parties acknowledge that they have a common law obligation, as expressed in Fed. R. Civ. P. 37(e), to take reasonable and proportional steps to preserve discoverable information in the party's possession, custody, or control. With respect to preservation of ESI, the parties agree as follows:

1.    Absent a showing of good cause by the requesting party, the parties shall not be required to modify the procedures used by them in the ordinary course of business to back-up and archive data; provided, however, that the parties shall preserve all discoverable ESI in their possession, custody, or control.

2.    The parties will supplement their disclosures in accordance with Fed. R. Civ. P. 26(e) with discoverable ESI responsive to a particular discovery request or mandatory disclosure where that data is created after a disclosure or response is made (unless excluded under Sections (D)(3) or (E)(1)-(2)).

3.    Absent a showing of good cause by the requesting party, the following categories of ESI need not be preserved:

a.    Deleted, slack, fragmented, or other data only accessible by forensics.

b.    Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

c.    On-line access data such as temporary internet files, history, cache, cookies, and the like.

d.    Data in metadata fields that are frequently updated automatically, such as last-opened dates (see also Section (E)(5)).

e.    Back-up data that are duplicative of data that are more accessible elsewhere.

f.    Server, system or network logs.

g.    Data remaining from systems no longer in use that is unintelligible on the systems in use.

h.   Electronic data (*e.g.*, email, calendars, contact data, and notes) sent to or from mobile devices (*e.g.*, iPhone, iPad, Android devices), provided that a copy of all such electronic data is automatically saved in real time elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage).

**E.    Privilege**

1.   A producing party shall create a privilege log of all documents fully withheld from production on the basis of a privilege or protection, unless otherwise agreed or excepted by this Agreement and Order. Privilege logs shall include a unique identification number for each document and the basis for the claim (attorney-client privileged or work-product protection). For ESI, the privilege log may be generated using available metadata, including author/recipient or to/from/cc/bcc names; the subject matter or title; and date. Should the available metadata provide insufficient information for the purpose of evaluating the privilege claim asserted, the producing party shall include such additional information as required by the Federal Rules of Civil Procedure. Privilege logs will be produced to all other parties no later than 30 days after delivering a production.

2.   Redactions will be logged, clearly stating the basis for the redaction.

3.   With respect to privileged or work-product information generated after the filing of the complaint, parties are not required to include any such information in privilege logs.

4.   Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

5.   Pursuant to Fed. R. Evid. 502(d), the production of any documents in this proceeding shall not, for the purposes of this proceeding or any other federal or state proceeding, constitute a waiver by the producing party of any privilege applicable to those documents, including the attorney-client privilege, attorney work-product protection, or any other privilege or protection recognized by law.  Information produced in discovery that is protected as privileged

or work product shall be immediately returned to the producing party, and its production shall not
constitute a waiver of such protection.

IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

DATED: _____12/2/2021_____        **DISABILITY RIGHTS WASHINGTON**

_____
Susan Kas, WSBA #36592
315 5th Ave South, Suite 850
Seattle, WA 98104
Tel. (206) 324-1521
Fax (206) 957-0729
Email: susank@dr-wa.org


**CARNEY GILLESPIE PLLP**
Christopher Carney, WSBA #30325
600 1st Ave, Suite LL08
Seattle, WA 98104
T: (206) 445-0212
F: (206) 238-9987
Email: christopher.carney@carneygillespie.com


**NATIONAL CENTER FOR YOUTH LAW**

Poonam Juneja, *admitted pro hac vice*
Freya Pitts, *admitted pro hac vice*
Jean Strout, *admitted pro hac vice*
1212 Broadway, Suite 600
Oakland, CA 94612
Tel. (510) 835-8098
Fax (510) 835-8099
Email:pjuneja@youthlaw.org

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**CHILDREN'S RIGHTS**
Leecia Welch, WSBA #26590
88 Pine Street, Suite 800
New York, NY 10005
Tel: (212) 683-2210
Email: lwelch@childrensrights.org

**MUNGER, TOLLES & OLSON LLP**
Laura K. Lin, *admitted pro hac vice*
    Email: Laura.Lin@mto.com
560 Mission Street, 27th Floor
San Francisco, CA 94105
Tel: (415) 512-4000
Fax: (415) 512-4077

Elizabeth S.P. Douglas, *admitted pro hac vice*
    Email: Elizabeth.Douglas@mto.com
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071
Tel: (213) 683-9100
Fax: (213) 687-3702

DATED:_____

**ROBERT W. FERGUSON**
Attorney General

_____

DANIEL J. JUDGE, WSBA No. 17392
WILLIAM M. MCGINTY, WSBA No. 41868
JAMES M. RICHARDSON III, WSBA No. 45095
Assistant Attorneys General
Attorneys for Defendants

Office of the Attorney General
PO Box 40124
Olympia, WA 98504-0124
Telephone:  (360) 586-6565
Fax:  (360) 586-6659
Email:      Daniel.Judge@atg.wa.gov
            William.McGinty@atg.wa.gov
            James.RichardsonIII@atg.wa.gov

48431120.2 AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY
STORED INFORMATION AND ORDER                                    PAGE - 12
(Case No. 2:21-CV-000113)

1

2

**ORDER**

3

Based on the foregoing, IT IS SO ORDERED.

4

DATED this 16th day of December, 2021.

5

6

_Barbara J. Rothstein_
BARBARA J. ROTHSTEIN
UNITED STATES DISTRICT JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

48431120.2 AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY
STORED INFORMATION AND ORDER                                                    PAGE - 13
(Case No. 2:21-CV-000113)

26