Exhibit A

1

2

3

4

5

6

7

8                                                          The Honorable Barbara J. Rothstein

9

10                          **UNITED STATES DISTRICT COURT**
                          **WESTERN DISTRICT OF WASHINGTON**
                                        **AT SEATTLE**

11

12    D.S.; D.Y. by and through his
      next friend JULIE KELLOGG-
13    MORTENSEN; H.A. by and through his
      next friend KRISTEN BISHOPP; and
14    DISABILITY RIGHTS WASHINGTON,
      a nonprofit membership organization for          NO. 2:21-cv-00113-BJR
15    the federally mandated Protection and
      Advocacy Systems,                                AGREEMENT AND
16                                                     SETTLEMENT ORDER
                                  Plaintiffs,
17
             v.
18
      WASHINGTON STATE
19    DEPARTMENT OF CHILDREN,
      YOUTH, AND FAMILIES; and ROSS
20    HUNTER, in his official capacity as
      Secretary of the Washington State
21    Department of Children, Youth, and
      Families,
22
                                  Defendants.
23

24

25

26

## I.   PURPOSE

1.      The purpose of this Agreement and Settlement Order (hereinafter "Agreement") is to set forth a plan and process for the Department of Children, Youth, and Families and Ross Hunter, in his official capacity as Secretary of the Washington State Department of Children, Youth, and Families ("DCYF," "Defendants," or "State") to better provide for dependent children with behavioral health and developmental disabilities to be promptly reunified with their families and adequately supported while in out-of-home care.  The Parties agree that dependent children with behavioral health and developmental disabilities should be safely raised in homes by their own families and in their own communities, in compliance with Section 504 of the Rehabilitation Act, the Americans with Disabilities Act, the Fourteenth Amendment to the United States Constitution, and the Adoption Assistance and Child Welfare Act.  This Agreement sets forth how Defendants will transform child safety and well-being practices to keep families together while supporting children's healthy physical, emotional, social, and cognitive development.

## II.   GOALS

2.      This Agreement will transform child safety and well-being practices to do the following:

1) Respect and promote the dignity and integrity of each family, while supporting the potential for every family to experience healing and recovery;

2) Develop and foster interdependence among extended family members and between families in their broader community to provide for children's stability, lasting and

loving relationships, and connections to their own extended families, communities, and cultures;

3) Provide for necessary supports and services for children to thrive in the least restrictive and most integrated settings, with a focus on strengthening families and communities to accommodate the individual needs of children with disabilities, without relying on settings that deny children opportunities to form connections and friendships with their peers;

4) Provide children with supports to recover from trauma they have experienced, and protect them from further trauma;

5) Recognize that children's own perspectives of their needs, strengths, potential, and experiences are valid, elicit and amplify those perspectives, and respond with individualized safety and well-being strategies centered on each child's unique experiences and goals;

6) Combat the institutional and systemic racism and ableism that result in disproportionate separation of families of color and families with disabilities, and meaningfully recognize and respond to the intersecting risks and harms associated with factors including disability, race, poverty, and gender identity; and

7) Continuously improve through ensuring the collaboration, inclusion, and leadership of those most affected—the children, young people, and families whose perspectives are informed by their own lived experiences.

3.    The Parties agree that all actions undertaken pursuant to this Agreement will be designed to establish and reinforce practices that are consistent with these goals.

AGREED SETTLEMENT ORDER
NO. 2:21-cv-00113-BJR
3
ATTORNEY GENERAL OF WASHINGTON
7141 Cleanwater Dr SW
PO Box 40124
Olympia, WA 98504-0124
(360) 586-6565

1

## III.   DEFINITIONS

2     4.     The following definitions apply for purposes of this Agreement:

3        1)  *Class Members* include: Individuals who are or in the future will:

4             i.    Be under the age of 18; AND

5

6             ii.   Be in DCYF's placement during a dependency proceeding under Wash.

7                   Rev. Code § 13.34 until the proceeding is dismissed; AND

8             iii.  ONE OR MORE OF THE FOLLOWING:

9                   a.   Have experienced five (5) or more placements, excluding trial return

10                       home, in-home dependencies, and temporary placements.  Temporary

11                       placements mean any of the following: overnight stay with a parent,

12                       hospital, respite care, youth camps, on runaway status, or detention.

13                       Temporary placements do not include a hotel stay, an office stay, or a

14                       night-to-night foster care placement.  But an individual shall not be

15                       counted to have five (5) or more placements under this section if they

16                       have been in the same placement for the last twelve (12) or more

17                       months, except if that placement was in a Qualified Residential

18                       Treatment Program (QRTP); OR

19

20                  b.   Have been referred for or are in out-of-state group care placement; OR

21

22                  c.   Have experienced a hotel or office stay in the past six (6) months; OR

23                  d.   Are awaiting a Children's Long-Term Inpatient Program (CLIP) bed.

24

25

26

ATTORNEY GENERAL OF WASHINGTON
7141 Cleanwater Dr SW
PO Box 40124
Olympia, WA 98504-0124
(360) 586-6565

2) *Extended family* is kin and fictive kin who may provide natural supports or placement for a child who has been separated from his, her, or their immediate family.

3) *Chosen family* includes other suitable adults or pre-adoptive families who agree to provide a licensed or unlicensed home or other supports for a child who has been separated from his, her, or their immediate family and who have been chosen to do so by a child with capacity to express preferences, or by the child's immediate family.

4) *Immediate family* includes parents and siblings who are biologically related to a child.

5) *LGBTQIA+ affirming* practices create safe, inclusive, and welcoming environments free of bias or judgement. These practices may include, but are not limited to, displaying and expressing messages of acceptance, rejecting and avoiding heteronormative assumptions, teaching and modeling respectful language and correct use of pronouns, providing access to self-care products and other resources to support expression of gender, and training all staff (if applicable) and/or caregivers to be sensitive and understanding of privacy needs, as well as potential associated mental health needs related to traumatic experiences stemming from discrimination, rejection, or abandonment.

6) *Trauma-informed* practices recognize that individuals have likely been exposed to trauma from harmful experiences including but not limited to, abuse, neglect, abandonment, domestic violence, discrimination, and/or separation from family

AGREED SETTLEMENT ORDER
NO. 2:21-cv-00113-BJR

5

ATTORNEY GENERAL OF WASHINGTON
7141 Cleanwater Dr SW
PO Box 40124
Olympia, WA 98504-0124
(360) 586-6565

members, such that behaviors and emotional reactions are understood within the context of how trauma impacts individuals.  Trauma-informed practices provide responsive individualized care that prioritizes assurances of safety, trustworthiness and transparency, peer support, collaboration and mutuality, empowerment and choice, and understanding of cultural, historical and gender issues, and avoids approaches that rely upon power or coercion.

7) *Culturally responsive* is being aware of and valuing cultural differences.  Culturally responsive practices may include, but are not limited to, recognizing and rejecting biases or stereotypes, having linguistically accessible materials and meetings, providing access to self-care products and other resources to support personal expression of cultural identity, making efforts to work and contract with BIPOC-led providers, learning from youth and families about their history and cultural norms, recruiting staff or consultants who share similar backgrounds and lived experiences with families served, and actively offering opportunities for youth and children to stay meaningfully connected to their cultural heritage and their communities of origin.

8) *Congregate care settings* are group residential care settings with licensed capacity to provide twenty-four hour services to a group of more than six unrelated children.

9) *Family settings* are settings in family homes that do not have licensed capacity to serve more than six children, unless the children are siblings.

10) *Substantial compliance* means that Defendants have satisfied every one of the distinct provisions of the Agreement, each of which are independent obligations.

AGREED SETTLEMENT ORDER
NO. 2:21-cv-00113-BJR

6

ATTORNEY GENERAL OF WASHINGTON
7141 Cleanwater Dr SW
PO Box 40124
Olympia, WA 98504-0124
(360) 586-6565

The Parties recognize that strict and literal compliance with every term of the Agreement is not required for a finding of substantial compliance as long as any deviations are unintentional and are so minor or trivial that they do not substantially defeat the object of the Agreement. *See Jeff D. v. Otter*, 643 F.3d 278, 284 (9th Cir. 2011); *Rouser v. White*, 825 F.3d 1076, 1081 (9th Cir. 2016).

11) *Effective date* is the date by which all Parties have signed this agreement.

12) *Neutral and objective qualified evaluator* is a trained professional or licensed clinician, with a centralized line of supervision distinct from child welfare field operations, responsible for making a recommendation regarding whether placement in a Qualified Residential Treatment Program (QRTP) is the most appropriate level of care for the child in the least restrictive environment, consistent with section 475A(c)(1)(D) of the Social Security Act and any approved and currently effective waivers under section 475A(c)(1)(D)(ii).

13) *Night-to-night foster care placement* is a licensed foster care placement when the plan is for the child or youth to be dropped off in the evening and removed in the morning due to the caregiver's known inability to provide care during the day. This does not include a planned overnight placement pending a transition to a long-term or different placement the following day or a planned placement that disrupts.

### IV.   SYSTEM IMPROVEMENTS

5.   Defendants commit to achieve the System Improvements in this Section guided by the stated Goals of this Agreement.

AGREED SETTLEMENT ORDER
NO. 2:21-cv-00113-BJR                    7                    ATTORNEY GENERAL OF WASHINGTON
7141 Cleanwater Dr SW
PO Box 40124
Olympia, WA 98504-0124
(360) 586-6565

1) Defendants will use data from their foster care placement continuum project and other applicable administrative data to determine the funding and capacity needs for each System Improvement and to establish an agreed implementation timeline.

2) The Parties recognize DCYF's reliance on legislative funding for some of the programmatic change commitments.  Defendants will take all reasonable steps available to it as an executive agency to seek resources necessary to timely implement and achieve the obligations under the Agreement during the 2023 to 2025 biennial budget cycle and subsequent legislative sessions.  Defendants also agree to advise the Legislature that its requests are to fund the implementation of the System Improvements set forth under this Agreement.

3) The Parties agree that inadequate funding alone is not a sufficient basis to obtain enforcement of the Agreement.  If the resources necessary to timely implement and achieve the obligations under the Agreement are not allocated, the Parties agree to proceed under the dispute resolution process set out in Section VI.  If, after a meet and confer and mediation as set forth under Section VI of this Agreement, a dispute remains, the Parties reserve the right to return to the United States District Court for the Western District of Washington under this cause number as indicated in paragraph 49.

6.    *Emerging Adulthood Housing Program*: Defendants will continue developing and implementing an array of supported housing programs statewide for sixteen to twenty-year-old young people in foster care or extended foster care who would prefer to live independently

AGREED SETTLEMENT ORDER
NO. 2:21-cv-00113-BJR

8

ATTORNEY GENERAL OF WASHINGTON
7141 Cleanwater Dr SW
PO Box 40124
Olympia, WA 98504-0124
(360) 586-6565

rather than in a family setting.  Defendants will have a statewide program that offers the following resources and voluntary supports:

1) Living unit configurations tailored to the needs of youth, inclusive of single occupancy and shared space.  Staffing available 24/7 to provide (i) culturally responsive, LGBTQIA+ affirming, and trauma-informed support and training in independent living skills, (ii) transportation and other necessary supports for participants to stay connected to their friends and families, and (iii) crisis response;

2) Intensive case management to provide participants access to necessary mental health services, substance use disorder (SUD) treatment, peer mentors, and educational/job supports;

3) Preparation for transitioning out of care by timely and actively connecting youth to housing, necessary resources, treatment and support;

4) Developmentally appropriate cultural and social activities that promote healing, recovery, mutual support and healthy community relationships.

5) Referral and access procedures that do not exclude youth solely on the basis of their permanency plan, criminal history, or history of behavioral health challenges.  At minimum, Defendants will allow all interested youth to participate in this program if the youth meets the following conditions:

    i.    The youth prefers to live more independently;

    ii.    The youth is discharging or being released from an institutional or congregate care setting, has been in placement exceptions or night-to-night

AGREED SETTLEMENT ORDER
NO. 2:21-cv-00113-BJR

9

ATTORNEY GENERAL OF WASHINGTON
7141 Cleanwater Dr SW
PO Box 40124
Olympia, WA 98504-0124
(360) 586-6565

foster care placement for five days or more, and/or has a history of disrupting from other group or family placements; and

    iii.   Defendants cannot demonstrate that with program supports, the youth currently poses a risk of serious harm to self or others in the program.

6) Defendants will make good faith efforts to expand the Emerging Adulthood Housing Program in DCYF Regions where eligible youth must wait longer than 60 days to begin participation.

7.    *Professional Therapeutic Foster Care:* Defendants will develop and implement a contract and licensing category for therapeutic foster parent professionals to support children and their immediate families when reunification or placement with extended or chosen family is not possible due to needs associated with the child's developmental disabilities or behavioral health needs.

1) Professional therapeutic foster parents will need the following supports and skills:

    i.   Specialized training and professional development; and

    ii.   Ability to provide therapeutic, culturally responsive, LGBTQIA+ affirming, and trauma-informed care in a family home environment.

2) Professional therapeutic foster parent responsibilities will include:

    i.   Maintaining supportive relationships with each child's parents that includes them as valued partners in making decisions and caring for the child, and facilitates active visitation and participation in the child's educational, extracurricular, medical, mental health, religious, cultural, and social activities; and

AGREED SETTLEMENT ORDER
NO. 2:21-cv-00113-BJR

10

ATTORNEY GENERAL OF WASHINGTON
7141 Cleanwater Dr SW
PO Box 40124
Olympia, WA 98504-0124
(360) 586-6565

ii.   Providing mentorship, coaching for immediate families, independent living skills training for youth, and aftercare supports as needed.

3) Defendants will make affirmative and trauma-informed efforts to offer and make available the following supports to each child receiving Professional Therapeutic Foster Care:

i.   Supports for reunification or transitions to other permanent homes or independence, including but not limited to visitation supports or coaching for families working towards reunification, independent living skills training, and employment or vocational preparation;

ii.   Facilitation for youth to exercise choice regarding their placement;

iii.   Access to necessary resources to (a) stabilize children, (b) increase opportunities for prevention of out-of-home care and family separations, and (c) meet needs for specialized therapy or counseling, case aides, evidence-based interventions, intensive case management, and/or other needs identified through the foster care placement continuum project; and

iv.   Development of expected timelines for reassessing safety and accessing resources necessary for return home.

4) Referral and access procedures do not exclude youth solely on the basis of their permanency plan, criminal history, or history of behavioral health challenges.  At minimum, Defendants will allow all interested youth to participate in this program if the youth meets the following conditions:

AGREED SETTLEMENT ORDER
NO. 2:21-cv-00113-BJR

11

ATTORNEY GENERAL OF WASHINGTON
7141 Cleanwater Dr SW
PO Box 40124
Olympia, WA 98504-0124
(360) 586-6565

i.  The youth over the age of thirteen, or immediate family of youth under the age of thirteen, desire therapeutic supports;

ii.  The youth is discharging or being released from an institutional or congregate care setting, has been in placement exceptions or night-to-night foster care placement for five days or more, and/or has a history of disrupting from other group or family placements; and

iii.  Defendants cannot demonstrate that with program supports, the youth currently poses a risk of serious harm to self or others in the program.

5)  Defendants will make good faith efforts to expand the Professional Therapeutic Foster Care program in DCYF Regions where eligible youth must wait longer than 60 days to begin participation.

8.  *Statewide Hub Home Model Program*: Defendants will develop and implement a statewide Hub Home Model (HHM) program comprised of, at a minimum, one Hub Home Group for each DCYF Region.  Defendants will designate adequate resources to oversee and coordinate statewide with the Hub home, according to the following standards:

1)  A Hub Home is defined as a licensed foster parent with experience caring for young people who currently or previously qualified for Wraparound with Intensive Services (WISe) or Behavioral Rehabilitative Services (BRS) services.  The Hub Home must be licensed for and maintain at least two bedrooms to accommodate respite care.

AGREED SETTLEMENT ORDER
NO. 2:21-cv-00113-BJR

12

ATTORNEY GENERAL OF WASHINGTON
7141 Cleanwater Dr SW
PO Box 40124
Olympia, WA 98504-0124
(360) 586-6565

2) A Satellite Home is defined as a caregiver with an approved home study and includes foster parents, kinship caregivers, and other adults connected to the young person.

3) A Hub Home Group (HHG) is defined as a Hub Home that supports up to ten Satellite Homes.

4) Each Hub Home will provide the following to the Satellite Homes in their HHG:

    i.   Culturally responsive, LGBTQIA+ affirming, and trauma-informed support to young people and adults;

    ii.   Coordination of Hub Home group meetings to occur, at a minimum, six times a year.  Meetings may include training, mentoring and coaching for satellite families;

    iii.   Coordination of planned and impromptu social events;

    iv.   Respite care as requested and including planned, crisis, and placement stabilization respite; and

    v.   Support permanency planning efforts and visitation for young people.

5) Each child living in the HHG will also receive adequate supports and services promoting permanency including reunification, visitation, stabilization, independent living skills training, and employment, and therapy or counseling.

6) Referral and access procedures do not exclude youth solely on the basis of their permanency plan, criminal history, or history of behavioral health challenges. At minimum, Defendants will allow all interested youth to participate in this program if the youth meets the following conditions:

    i.    The youth over the age of thirteen, or immediate family of the youth under the age of thirteen, desire to participate in an HHG;

    ii.    The youth is discharging or being released from an institutional or congregate care setting, has been in placement exceptions or night-to-night foster care placement for five days or more, and/or has a history of disrupting from other group or family placements; and

    iii.    Defendants cannot demonstrate that with program supports, the youth currently poses a risk of serious harm to self or others in the program.

7) After one HHG is established in each DCYF Region, Defendants will make good faith efforts to expand the HHM program in DCYF Regions where eligible youth must wait longer than 60 days to begin participation.

9.    *Revising Licensing Standards:* Defendants will amend contracts and policies, and engage in negotiated rule-making, to amend licensing requirements for foster care placements to be more developmentally appropriate and/or flexible to meet individual youth's needs.  The amendments will at minimum define and require the following:

1) Developmentally appropriate autonomy and privacy, including but not limited to developmentally typical access to mobile phones and support or resources necessary to engage in normal social activities with peers;

2) Obligations to facilitate connections to immediate, extended, and chosen family members, in accordance with the youth's case plan, including but not limited to potential long-term or permanent placements;

AGREED SETTLEMENT ORDER
NO. 2:21-cv-00113-BJR

14

ATTORNEY GENERAL OF WASHINGTON
7141 Cleanwater Dr SW
PO Box 40124
Olympia, WA 98504-0124
(360) 586-6565

3) Responsibility to support youth to remain in their school of origin in accordance with the youth's case plan as required by 42 U.S.C. §675(1)(G);

4) Expectations to provide education, training, and coaching to families of origin and other potential long-term or permanent placements about how best to support the child;

5) Expectations to engage in service or discharge planning;

6) Standards for providing sufficient nutrition and satisfaction of dietary needs; and

7) Training requirements and expectations for providing culturally responsive, LGBTQIA+ affirming and trauma-informed care.

10. *Kinship Engagement Unit*: Defendants will establish a statewide Kinship Engagement Unit (KEU) that includes a family finding model to identify and engage Class Members' extended family members and friends to support families in safely reunifying or staying together.  The KEU will be responsible for performing the following functions:

1) Conducting initial and on-going family engagement methods that utilize individualized communication methods to enlist support of extended family members and family friends that the child and/or family have identified as trusted and familiar individuals;

2) Providing information about available supports and resources for immediate and extended families, including family reconciliation services, evidence-based practices, and the options listed above in paragraphs 6-8;

AGREED SETTLEMENT ORDER
NO. 2:21-cv-00113-BJR

15

ATTORNEY GENERAL OF WASHINGTON
7141 Cleanwater Dr SW
PO Box 40124
Olympia, WA 98504-0124
(360) 586-6565

3) Offering peer support and system navigation support to address barriers to engagement and assist in accessing resources and supports that extended and immediate families need;

4) Guiding extended and chosen family placements through the licensure process as requested; and

5) Assisting extended and chosen family placements with the requirements of RCW 13.34.065 or 13.34.130 as requested.

Defendants will contract with a Stakeholder Facilitator to conduct a stakeholdering process to assist with development, implementation, and evaluation of the KEU as set forth in Attachment A.

11. *Family Group Planning:* Defendants will review Shared Planning Meeting (SPM) and Family Team Decision Meeting (FTDM) policies and practices for improvements and revise in response to input from individuals with lived experience and other stakeholdering feedback as set forth in Attachment A.  Defendants will establish a quality assurance process for SPM and FTDM practices. These practices must be trauma-informed, culturally responsive, LGBTQIA+ affirming and fulfill the following functions:

1) Support and encourage active participation of children and youth, their immediate and extended family members, and other individuals who have trusting relationships with the child and family (collectively the "Family Team") in the SPM/FTDM process, including offering meetings in times and places that are accessible for all members of the Family Team;

AGREED SETTLEMENT ORDER
NO. 2:21-cv-00113-BJR

16

ATTORNEY GENERAL OF WASHINGTON
7141 Cleanwater Dr SW
PO Box 40124
Olympia, WA 98504-0124
(360) 586-6565

2) Educate the Family Team about available services and placement options, including family reconciliation services, evidence-based practices, and the options listed above in paragraphs 6-8;

3) Elicit and value the child or youth's preferences including, but not limited to, where to live, where to go to school, what treatment or services to receive, what supports are needed for safety, and who is involved in their lives;

4) Empower and authorize Family Teams to make and revisit decisions about how and where to best support the child or youth's health, safety, stability, cultural socialization, and relationships with family; and

5) Provide necessary supports and resources, including those identified in the SPM/FTDMs.

12. *Referrals and Transitions*: Defendants will develop trauma-informed, culturally responsive and LGBTQIA+ affirming referral and transition protocols in response to input from individuals with lived experience and other stakeholdering feedback referenced in Attachment A.  Defendants will implement the referral and transition protocols, which will provide for the following:

1) Access protocols and memoranda of understanding (MOU) with interested local hospitals and juvenile justice entities to refer youth and families for pre-placement and reconciliation services to prevent the need for out-of-home care;

2) Opportunities for children and youth to develop and verify their own histories and information in order to explain their own strengths, needs and goals to service providers and potential extended, chosen, or foster families;

AGREED SETTLEMENT ORDER
NO. 2:21-cv-00113-BJR

17

ATTORNEY GENERAL OF WASHINGTON
7141 Cleanwater Dr SW
PO Box 40124
Olympia, WA 98504-0124
(360) 586-6565

3)  Supports to preserve relationships where possible or to address grief and loss post-transition; and

4)  Pre-placement phone or video contacts and in-person visits and orientation for children and youth to meet potential foster or unfamiliar kinship families.

13.  *QRTPs:* Defendants will not place any Class Member in a congregate care setting unless there has been an initial evaluation and by the end of 2023 subsequent evaluation every 90 days thereafter determining that Qualified Residential Treatment Program (QRTP) placement is and continues to be the most appropriate level of care for the child in the least restrictive environment.  The initial and 90-day evaluations must:

1)  Be conducted by a neutral and objective qualified evaluator;

2)  Include interviews, preferably in-person, with youth, family, and any involved natural supports and record reviews of primary source documents;

3)  Identify strengths and needs of the child, as well as child-specific short and long-term mental and behavioral health goals, and criteria for the youth to be reunified with family or placed in the care of extended family, suitable other adult(s), or a foster home;

4)  Include a finding that family-based alternatives, including options listed above in paragraphs 6-8 have been considered and deemed insufficient to meet the child's needs; and

5)  Identify discharge criteria and progress toward meeting discharge criteria.

**V. MONITORING, SYSTEM IMPROVEMENT IMPLEMENTATION, AND EXIT CRITERIA**

AGREED SETTLEMENT ORDER
NO. 2:21-cv-00113-BJR

18

ATTORNEY GENERAL OF WASHINGTON
7141 Cleanwater Dr SW
PO Box 40124
Olympia, WA 98504-0124
(360) 586-6565

## A.      Monitoring

14.      The Parties agree that Kathleen Noonan shall be the Monitor of the State's compliance with the Agreement and achievement of the exit criteria.

15.      The Monitor's duties shall be (1) to review and provide written comments and recommendations on the State's Implementation Plan; (2) to report on the State's progress in implementing the terms of the Agreement and the achievement of the Exit Criteria as set forth herein; and (3) to assist the Parties with resolving disputes that may arise in the course of implementation of the Agreement.

16.      The Monitor's authority includes the ability to request and receive quarterly data reports and updates from the State; to meet with the Parties on a quarterly basis; to request and receive underlying data, files, and records as necessary to carry out the Monitor's responsibilities under this Agreement, including but not limited to demographic data such as disability status, race, ethnicity, gender, and age; to assist the Parties with dispute resolution; and to communicate independently with any individual, including but not limited to executive branch staff, providers, caregivers, and others as the Monitor determines necessary.  If the Monitor raises concerns as to the validity of underlying data that the State and Plaintiffs' Counsel cannot resolve, these data disputes shall proceed through the dispute resolution process in Section VI.  The Monitor shall agree to respect the confidentiality of all information related to individually identifiable clients of Defendants, subject to applicable law.

17.      The reports of the Monitor shall be public documents, except that any individually identifiable information and any other confidential information protected from disclosure by law shall be redacted or otherwise removed from any public report.

18.     The State shall contract with the Monitor to satisfy the Monitor's duties and shall be responsible for funding the Monitor and subcontractors, as necessary, to perform the statement of work under the Monitor's contract and consistent with this section of the Agreement.  The Parties shall make a good-faith effort to reach agreement on any issues relating to the Monitor's work under this section and any unresolvable disputes shall proceed through the dispute resolution process in Section VI.

19.     Plaintiffs' Counsel shall have access, through the Monitor, to all information made available to the Monitor, subject to the Protective Order in effect in this case.

20.     If at any point the Monitor can no longer serve, the Parties shall agree on another Monitor, with input and recommendations from the outgoing Monitor.  If the Parties are unable to agree on a replacement, the Court shall select a replacement Monitor.

**B.  Implementation**

*Implementation Plan*

21.     In accordance with Attachment A, the Stakeholder Facilitator will gather written and live input from youth, families, and stakeholders regarding the System Improvements set forth in paragraphs 10, 11, and 12 and report stakeholder recommendations.

22.     Within 90 days of final approval of the Agreement, Defendants will draft an Implementation Plan.  The Implementation Plan will delineate the strategies, processes, and actions Defendants will take to implement all System Improvements set forth in the Agreement.  For each System Improvement, the Implementation Plan must identify: (1) System Improvement leads, (2) necessary budget requests, (3) related trainings, (4) strategies to achieve the improvement, (5) subject matter expert consultants to be retained if

AGREED SETTLEMENT ORDER
NO. 2:21-cv-00113-BJR

20

ATTORNEY GENERAL OF WASHINGTON
7141 Cleanwater Dr SW
PO Box 40124
Olympia, WA 98504-0124
(360) 586-6565

deemed necessary, (6) necessary revisions to policy and contracts, (7) access and eligibility protocols, and (8) quality assurance benchmarks and final exit criteria.  The Implementation Plan must set forth a regional rollout schedule for the System Improvements and projected timelines for when the Implementation Plan tasks will begin and be completed.  The Implementation Plan must also provide strategies for meeting Class Member needs in the least restrictive and most integrated settings appropriate while Defendants are implementing the System Improvements.  In preparing the Implementation Plan, Defendants must consider input from the stakeholdering process conducted by the Stakeholder Facilitator.

23.     Defendants will submit the draft Implementation Plan to Plaintiffs' Counsel and the Monitor, as well as make it publicly available online.  Plaintiffs' Counsel, the Monitor and the public will have 30 days to submit additional feedback.  Within 30 days of this deadline, Defendants shall review the feedback, revise the Implementation Plan at their discretion, and submit the revised plan to Plaintiffs' Counsel and Monitor for review.

24.     The Implementation Plan must include methodology proposals for how Defendants' progress toward achieving each System Improvement will be measured.  The Implementation Plan must also set clear timelines for taking any intermediary steps necessary to evaluate progress toward the System Improvements and assign responsibility for supplying information necessary to the Monitor.  The Monitor will review the methodology proposals and may consult with each Party.

25.     The Parties will attempt to resolve any disagreements about the Implementation Plan, including the methodology proposals, in good faith.  If they cannot do so on their own, they shall seek assistance from the Monitor.  If the Parties continue to have disagreements about the

AGREED SETTLEMENT ORDER
NO. 2:21-cv-00113-BJR

21

ATTORNEY GENERAL OF WASHINGTON
7141 Cleanwater Dr SW
PO Box 40124
Olympia, WA 98504-0124
(360) 586-6565

Implementation Plan, disputes shall proceed through the dispute resolution process in Section VI on an expedited basis, with deadlines set by the Monitor.

*Implementation Progress and Reporting*

26.     Defendants will follow the strategies and meet the benchmarks set forth in their Implementation Plan, and consistent with this Agreement.  While Defendants are establishing System Improvements, Defendants will continue to abide by the terms set forth in the June 29, 2021 Preliminary Injunction (Dkt. No. 63).  However, in the case of more than one refusal of an offered placement, Defendants need not conduct FDTMs as directed under Dkt. 63; the next scheduled SPM may be held in its place.  Defendants may combine SPMs with other previously scheduled meetings (e.g. permanency planning meetings) occurring during the same week without violating the ten-day requirement for SPMs.  Any use of night-to-night foster care placements, placement exceptions, or out-of-state placements shall be reported to the Monitor and subject to review by Plaintiffs' Counsel at the Parties' quarterly meeting.

27.     Defendants may report on compliance with Dkt. No. 63 in their Implementation Plan and subsequent reporting required under this Agreement.  Separate compliance reporting under Dkt. No. 63 is no longer necessary.

28.     By December 4, 2023, Defendants will provide information to the Monitor regarding their initial data and progress towards meeting the System Improvements, and requested underlying data.

29.     By July 1, 2024, and every six months thereafter, Defendants shall provide to the Monitor data regarding the prior six-month period necessary to evaluate their progress with respect to the System Improvements.  Such data will include Defendants' progress towards

AGREED SETTLEMENT ORDER
NO. 2:21-cv-00113-BJR

22

ATTORNEY GENERAL OF WASHINGTON
7141 Cleanwater Dr SW
PO Box 40124
Olympia, WA 98504-0124
(360) 586-6565

meeting the requirements set forth in the Implementation Plan and consistent with this Agreement.  Defendants shall also address challenges encountered during the relevant time period and remedial efforts to address those challenges.

30.     By February 18, 2025, the Monitor shall provide a draft initial report to Plaintiffs' Counsel and Defendants regarding Defendants' progress in 2023 and 2024 towards achieving the System Improvements and Exit Criteria.  Thereafter, the Monitor shall provide a draft annual report to Plaintiffs' Counsel and Defendants by the third Tuesday in February of each year regarding Defendants' progress towards achieving the System Improvements and Exit Criteria.  The period of review for each annual report shall be the previous calendar year.

31.     The Monitor shall provide the Parties no fewer than 15 days to comment on the draft report.  The Monitor shall confer with each Party about the draft report, take into consideration each Party's comments, and finalize the report within 30 days of providing the draft to the Parties.

32.     If the Monitor has concerns about Defendants' data, including but not limited to concerns about availability or accuracy of data sources, the Monitor will consult with the Parties to address these concerns, subject to the dispute resolution process set forth in Section VI.

33.     The Monitor's final reports shall be filed with the Court and made public on the Parties' websites.

34.     Within 60 days following issuance of the Monitor's initial report, the Parties shall agree on a timeline for engaging the Stakeholder Facilitator to reconvene stakeholders.  As set forth in Attachment A, the Stakeholder Facilitator will gather and report input from youth, families,

AGREED SETTLEMENT ORDER
NO. 2:21-cv-00113-BJR

23

ATTORNEY GENERAL OF WASHINGTON
7141 Cleanwater Dr SW
PO Box 40124
Olympia, WA 98504-0124
(360) 586-6565

and their advocates on their experience with the Kinship Engagement Unit, Family Group

Planning, and Referrals and Transitions from the date of court approval of the Agreement

through the present.

35.     The Parties recognize Defendants should have flexibility to further innovate beyond the

terms of this Agreement and there may be competing resource demands.  Any time after July 1,

2024, either Party may invoke the dispute resolution process to renegotiate the terms herein.

**C. Exit Procedure**

36.     The Defendants' obligations under this Agreement shall terminate when they have

demonstrated substantial compliance with the terms herein.  In making its substantial

compliance determination, the Parties agree that the Court should also find the Defendants

have satisfied the exit criteria described in paragraphs 37-44 and consider whether the

Defendants met the additional criteria set forth in paragraph 45 below.

37.     *Emerging Adulthood Housing Program Exit Criteria*

    1) Defendants have maintained adequate resources to oversee and sustain

       contracting/recruitment, training, and provider quality; and

    2) Consistent with the Implementation Plan, sites, contracts, licensing, policies, and

       additional program staff training in therapeutic, culturally responsive, LGBTQIA+

       affirming and trauma-informed care are established statewide.

38.     *Professional Therapeutic Foster Care Exit Criteria*

    1) Defendants have maintained adequate resources to oversee and sustain

       contracting/recruitment, training, and quality; and

AGREED SETTLEMENT ORDER
NO. 2:21-cv-00113-BJR

24

ATTORNEY GENERAL OF WASHINGTON
7141 Cleanwater Dr SW
PO Box 40124
Olympia, WA 98504-0124
(360) 586-6565

2) Consistent with the Implementation Plan, sites, contracts, licensing, policies, and additional program staff training in therapeutic, culturally responsive, LGBTQIA+ affirming and trauma-informed care are established statewide.

39. *Statewide Hub Home Model Program Exit Criteria*

1) Defendants have maintained adequate resources to oversee and sustain contracting/recruitment, training, and quality; and

2) Consistent with the Implementation Plan, sites, contracts, licensing, policies, and additional DCYF and program staff training in therapeutic, culturally responsive, LGBTQIA+ affirming and trauma-informed care are established statewide.

40. *Licensing Standard Exit Criteria*

1) New developmentally appropriate rules have been adopted in compliance with Title 34 RCW and implemented for foster care placements.

41. *Kinship Engagement Unit Exit Criteria*

1) Kinship Engagement Unit with family finding model, including providing individualized communication methods about available community-based services and resources, is established statewide;

2) Kinship supports, including peer support, system navigation, licensure assistance, and information about available supports, are available to kin of Class Members;

3) Defendants have received and considered stakeholder feedback as described in Attachment A regarding any additional kinship supports; and

4) Data is collected and demonstrates improvements in timeliness and delivery of kinship engagement services.

AGREED SETTLEMENT ORDER
NO. 2:21-cv-00113-BJR

25

ATTORNEY GENERAL OF WASHINGTON
7141 Cleanwater Dr SW
PO Box 40124
Olympia, WA 98504-0124
(360) 586-6565

42. *Family Group Planning Exit Criteria*

1) Defendants have received and considered stakeholder feedback as described in Attachment A regarding the maintenance or revision of its SPM and FTDM policies;

2) DCYF staff have received training and receive ongoing coaching in SPM and FTDM policies and protocols, as identified in the Implementation Plan; and

3) Defendants have implemented quality assurance as outlined in the Implementation Plan.

43. *Referrals and Transitions Exit Criteria*

1) MOUs are in place between DCYF and hospitals and juvenile courts, as identified in the Implementation Plan;

2) Class Members are given an opportunity to develop and verify their own case histories and information; and

3) Defendants have developed and implemented a protocol for pre-placement contacts between Class Members and potential placement resources;

44. *QRTPs Exit Criteria*

1) 90% of youth in a QRTP or other congregate care setting have been determined to need QRTP placement pursuant to preplacement and subsequent 90-day evaluations by a neutral and objective qualified evaluator.

45. In making a determination regarding substantial compliance, the Court should consider the State's good faith efforts to implement the goals of the Agreement, and the following:

1    1)  Whether 90% of eligible youth and children referred to or requesting services from

the Emerging Adulthood Housing program, Professional Therapeutic Foster Care

program, and HHM program statewide (in accordance with the access and

eligibility protocols set forth in the Implementation Plan) are served within 60 days

of request or referral.

2)  Whether Defendants have eliminated the use of night-to-night foster care

placements and placement exceptions in any hotel, motel, office of a contractor, car,

or state agency office during overnight hours (between 10 pm to 6 am) other than in

the event the youth returns to or enters DCYF custody between those hours, and

Defendants must use a placement exception for the remainder of that night.

3)  Whether Defendants consistently have kept the number of placements in out-of-

state facilities to 10 or fewer, excluding placements in facilities contiguous to

Washington State communities, placements in facilities that the dependency court

agrees support the individualized treatment needs of the child, and placements in

facilities located in close proximity to an identified potential permanent home and

there is consent by the child, if over the age of thirteen.

4)  Whether Defendants have reduced the number of children under the age of eighteen

in DCYF placement who satisfy the Class Member criteria set forth in paragraph

4.1)iii.a by the target percentage established in the Implementation Plan, subject to

the dispute resolution process set forth in Section VI.

## VI.    DISPUTE RESOLUTION

ATTORNEY GENERAL OF WASHINGTON
7141 Cleanwater Dr SW
PO Box 40124
Olympia, WA 98504-0124
(360) 586-6565

46.     The Parties agree that the Monitor, Kathleen Noonan, shall also have the authority to act as Mediator.  If she is subsequently unable or unwilling to serve, the Parties agree to choose a mutually agreeable alternative Mediator.  If they are unable to agree, the Court shall select the Mediator.  Neither Party shall have supervisory authority over the Mediator.  The Parties shall engage the Mediator at Defendants' expense.  The Parties shall have access to all information utilized by the Mediator consistent with the terms of this Agreement.  The Mediator shall be bound by the Protective Order governing this action, and all confidential information obtained by the Mediator shall be maintained as such by the Mediator consistent with federal and state law, and shall be returned to Defendants or destroyed upon final exit and termination of jurisdiction over this Agreement.

47.     The dispute resolution process shall be initiated by one Party sending written notice to the other Party of their intent to initiate dispute resolution.  The written notice shall specify the section of the Agreement at issue, explain in detail why dispute resolution is needed, and specify the facts and information that support the conclusion.

48.     Except in circumstances indicating that Class Members are threatened with imminent irreparable injury, within fourteen (14) days of the service of any notice of intent to initiate dispute resolution, the Parties will meet and confer to try to resolve the dispute.  If the Parties fail to resolve the dispute through the meet and confer process, then the Parties will contact the Mediator to schedule a meeting.  Any such meeting will be held at the convenience of the Mediator and the Parties, but in no event will it occur more than fourteen (14) days after the Parties contact the Mediator to request such meeting (with extensions permitted through mutual agreement of the Parties).

AGREED SETTLEMENT ORDER
NO. 2:21-cv-00113-BJR                          28                ATTORNEY GENERAL OF WASHINGTON
                                                                          7141 Cleanwater Dr SW
                                                                              PO Box 40124
                                                                          Olympia, WA 98504-0124
                                                                              (360) 586-6565

49.     If, after completion of the mediation, the Parties have not resolved the dispute, either Party may seek relief from the Court, and the Court shall have the authority and jurisdiction to resolve any disputes brought before it.

50.     Plaintiffs' Counsel may bypass the sections above and seek immediate relief in Court if they clearly demonstrate that any Defendant's action or inaction in material contravention of this Agreement caused or is likely to cause an immediate and substantial risk of harm to Class Members and there is no time for negotiations.

51.     A waiver of any breach of this Agreement by any Party shall not be deemed a waiver of any other prior or subsequent breach of this Agreement by any Party.

52.     The Court shall have and shall retain jurisdiction over any enforcement under this section.

### VII.    COURT APPROVAL AND DISMISSAL

53.     As soon as practical after the execution of this Agreement, the Parties shall file a joint or unopposed motion seeking Preliminary Approval of the Agreement.

54.     After the Order of Preliminary Approval is granted, and as instructed by the Court, in advance of the final fairness hearing the Parties shall submit a joint or unopposed motion for a Judgment and Order granting final approval of the Agreement.  The Parties agree that the proposed Judgment and Order shall:

   1)  Grant final approval of the Agreement, without modification of its terms in any
       respect, unless the Parties have agreed to any modifications, as fair, reasonable, and
       adequate to the Plaintiff Class as provided in Federal Rule of Civil Procedure 23,
       and find that the Agreement resulted from extensive arm's length, good faith

AGREED SETTLEMENT ORDER
NO. 2:21-cv-00113-BJR

29

ATTORNEY GENERAL OF WASHINGTON
7141 Cleanwater Dr SW
PO Box 40124
Olympia, WA 98504-0124
(360) 586-6565

negotiations between the Parties through experienced counsel, with the assistance of an independent mediator and subject-matter expert.

2) Dismiss the Litigation with prejudice, pursuant to Federal Rule of Civil Procedure 41(a)(2), after compliance with Federal Rule of Civil Procedure 23(e).  The Order of dismissal will also comply with the requirements of Federal Rule of Civil Procedure 65(d)(1), and the Court will expressly incorporate the actual terms of this Agreement and make the Parties' compliance with the terms of this Agreement part of that dismissal order.

3) Find that each Class Member shall be deemed to have released all claims for declarative and systemic injunctive relief asserted in the Complaint arising or accruing against the Defendants on or before the Date of Final Approval.

4) Incorporate the entirety of the express terms of the Agreement and provide that the Court has and shall retain jurisdiction over its Judgment and Order for the purposes stated herein.

55.     The Parties will make good faith efforts to negotiate the amount of attorneys' fees, costs, and litigation expenses to be awarded to Plaintiffs' Counsel.  In the event that the Parties cannot reach agreement with respect to the amount of attorneys' fees, costs, and expenses, they will submit the matter for mediation to a mutually agreeable mediator.  If attempts to mediate are not successful, Plaintiffs' Counsel may file the appropriate motion with the District Court.

56.     The Parties affirm an agreement that attorneys' fees, costs, and expenses shall be paid to Plaintiffs' Counsel for the litigation, mediation, and post-settlement monitoring through the date Defendants' obligations under this Agreement terminate.  The Parties agree that any

AGREED SETTLEMENT ORDER
NO. 2:21-cv-00113-BJR                           30                 ATTORNEY GENERAL OF WASHINGTON
                                                                                          7141 Cleanwater Dr SW
                                                                                          PO Box 40124
                                                                                          Olympia, WA 98504-0124
                                                                                          (360) 586-6565

motion or stipulation for an order approving fees, costs, and expenses may be submitted to the Court for approval under Federal Rule Civil Procedure 23(h).

## VIII.    MISCELLANEOUS

57.     This Agreement shall be interpreted under applicable federal law.

58.     Nothing in this Agreement shall be deemed to limit the Court's powers of contempt or any other power possessed by the Court.

59.     Nothing in this Agreement shall be deemed to limit the ability of any individual Class Member to obtain individual relief of any kind to which they would otherwise be entitled under state or federal law.

60.     Nothing in this Agreement shall be deemed to limit the ability of Disability Rights Washington (DRW) to fulfill its federal mandates pursuant to the Protection and Advocacy for Individuals with Mental Illness (PAIMI) Act, 42 U.S.C. § 10801, et seq., and the regulations promulgated thereto, 42 C.F.R. § 51 et seq., the Developmental Disabilities Assistance and Bill of Rights (DD) Act, 42 U.S.C. § 15041, et seq., and the regulations promulgated thereto, 45 C.F.R. § 1386 et seq., and the Protection and Advocacy of Individual Rights (PAIR) Act, 29 U.S.C. § 794e.

61.     This Agreement contains all the terms and conditions agreed upon by the Parties.  No other understandings, oral or otherwise, regarding the subject matter of this Agreement shall be deemed to exist or to bind any of the Parties hereto.  The Parties have participated, and had an equal opportunity to participate, in the drafting and approval of drafting of this Agreement.  No ambiguity shall be construed against any Party based upon a claim that the Party drafted the ambiguous language.

AGREED SETTLEMENT ORDER
NO. 2:21-cv-00113-BJR

31

ATTORNEY GENERAL OF WASHINGTON
7141 Cleanwater Dr SW
PO Box 40124
Olympia, WA 98504-0124
(360) 586-6565

62.     Signors of this Agreement represent and warrant they have full power and authority to enter into this Agreement and to carry out all actions required of them to the extent allowed by law.  Each of the signors warrants that he/she has fully read and agrees to all the terms and conditions contained herein.

63.     This Agreement may be amended in compliance with federal law, and only by mutual agreement of the Parties and approval of the Court.  In order to be binding, such amendments must be in writing, signed by persons authorized to bind each of the Parties, approved by the Court, and in compliance with any other requirements of federal law.  The Parties further agree to work in good faith to obtain Court approval of necessary amendments or modifications.

64.     The provisions of this Agreement may be waived only by an instrument in writing executed by the waiving Party and approved as necessary by the Court.  The waiver by any Party of any breach of this Agreement shall not be deemed or be construed as a waiver of any other breach, whether prior, subsequent or contemporaneous, of this Agreement.

65.     The provisions of this Agreement are severable.  If any court holds any provision of this Agreement invalid, that invalidity shall not affect the other provisions of the Agreement.

66.     This Agreement shall inure to the benefit of and be binding upon the legal representatives and any successor(s) of Plaintiffs and Defendants.  The obligations of Defendants set forth in this Agreement are binding whether they are performed, delivered, implemented, or managed directly by the Defendant(s)' employees or by provider agencies under Contract, Grant, or Subcontract.  This Agreement does not constitute, and shall not be construed as, an admission of liability, wrongdoing, or fault by any Party.  Nor shall this

AGREED SETTLEMENT ORDER
NO. 2:21-cv-00113-BJR

32

ATTORNEY GENERAL OF WASHINGTON
7141 Cleanwater Dr SW
PO Box 40124
Olympia, WA 98504-0124
(360) 586-6565

Agreement be offered or received as evidence of any liability, wrongdoing or fault by any part, other than such proceedings as may be necessary to effectuate this Agreement.

67.     This Agreement represents a compromise of the issues addressed herein.  Neither Party waives the right to assert legal or factual arguments in any future dispute arising during the term of this Agreement, or in the event that the Agreement ends, terminates, or becomes null and void, for any reason.

68.     Each of the Parties to this Agreement shall use their best efforts to cause the Agreement to be given final approval.  If, for any reason, the Court does not ultimately approve this Agreement as a fair, reasonable, and adequate settlement of the *D.S.* litigation as between the Plaintiffs and Defendants, this Agreement shall be null and void.

69.     This Agreement may be executed in counterparts, each of which will be deemed to be an original and all of which taken together shall constitute a single instrument.  This Agreement may be executed by signature via facsimile transmission or electronic mail which shall be deemed the same as an original signature.

**FOR AND ON BEHALF OF PLAINTIFFS:**

FOR PLAINTIFF DISABILITY RIGHTS WASHINGTON:

Dated: June  6 , 2022                                _____

Mark Stroh, Executive Director

1

2

3

Dated: June  6 , 2022

4

5

6

7

8

9

Dated: June  6 , 2022

10

11

12

13

14

15

Dated: June  6 , 2022

16

17

18

19

20

21

22

Dated: June  6 , 2022

23

24

25

26

ATTORNEYS FOR PLAINTIFFS:

DISABILITY RIGHTS WASHINGTON

Susan Kas, WSBA #36592
315 5th Ave South, Suite 850
Seattle, WA 98104
Tel. (206) 324-1521
Fax (206) 957-0729
Email: susank@dr-wa.org

CARNEY GILLESPIE PLLP

Christopher Carney, WSBA #30325
600 1st Ave, Suite LL08
Seattle, WA 98104
Tel. (206) 445-0212
Fax (206) 238-9987
Email: christopher.carney@carneygillespie.com

NATIONAL CENTER FOR YOUTH LAW

Poonam Juneja, *admitted pro hac vice*
Freya Pitts, *admitted pro hac vice*
Jean Strout, *admitted pro hac vice*
1212 Broadway, Suite 600
Oakland, CA 94612
Tel. (510) 835-8098
Fax (510) 835-8099
Email: pjuneja@youthlaw.org

CHILDREN'S RIGHTS

Leecia Welch, WSBA #26590
2021 Fillmore Street
San Francisco, CA 94115
Tel. (415) 602-5202
Email: lwelch@childrensrights.org

AGREED SETTLEMENT ORDER
NO. 2:21-cv-00113-BJR

34

ATTORNEY GENERAL OF WASHINGTON
7141 Cleanwater Dr SW
PO Box 40124
Olympia, WA 98504-0124
(360) 586-6565

1

2      Dated: June _6_, 2022

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18      Dated: June _03_, 2022

19

20

21

22

23

24      Dated: June _06_, 2022

25

26

MUNGER, TOLLES & OLSON LLP

Laura Lin, *admitted pro hac vice*
560 Mission Street, 27th Floor
San Francisco, CA 94105
Tel. (415) 512-4034
Fax (415) 644-5934
Email: laura.lin@mto.com

Alex Gorin, WSBA No. 53538
350 S. Grand Ave., 50th Floor
Los Angeles, CA 90071-3426
Tel. (213) 683-9226
Fax (213) 683-4024
Email: Alex.Gorin@mto.com

**FOR AND ON BEHALF OF DEFENDANTS:**

FOR DEFENDANTS WASHINGTON STATE
DEPARTMENT OF CHILDREN, YOUTH,
AND FAMILIES AND ROSS HUNTER IN HIS
OFFICIAL CAPACITY AS SECRETARY OF
THE WASHINGTON STATE DEPARTMENT
OF CHILDREN, YOUTH, AND FAMILIES:

ROSS HUNTER, Secretary of the Washington
State Department of Children, Youth, and
Families

ATTORNEYS FOR DEFENDANTS:

ROBERT W. FERGUSON
Attorney General

Daniel J. Judge, WSBA No. 17392
*Senior Counsel*
Marko L. Pavela, WSBA No. 49160

AGREED SETTLEMENT ORDER
NO. 2:21-cv-00113-BJR

35

ATTORNEY GENERAL OF WASHINGTON
7141 Cleanwater Dr SW
PO Box 40124
Olympia, WA 98504-0124
(360) 586-6565

James M. Richardson III, WSBA No. 45095
*Assistant Attorneys General*

Office of the Attorney General
7141 Cleanwater Drive SW
PO Box 40124 Olympia, WA 98504-0124
Tel. (360) 586-6565
Fax (360) 586-6659
Email: Daniel.Judge@atg.wa.gov
          William.McGinty@atg.wa.gov
          James.RichardsonIII@atg.wa.gov

AGREED SETTLEMENT ORDER                36
NO. 2:21-cv-00113-BJR

ATTORNEY GENERAL OF WASHINGTON
7141 Cleanwater Dr SW
PO Box 40124
Olympia, WA 98504-0124
(360) 586-6565

**Attachment A – Stakeholder Facilitator and Process Description**

**A. The Stakeholder Facilitator will be an individual or nonprofit with the following characteristics:**

1. Expertise in working with youth in foster care and improving foster care systems
2. Access to research and development hub capable of capturing data, input, and experiences from youth with experience in foster care
3. Professional experience in using trauma-informed, culturally-responsive, and youth-friendly methods for gathering input and feedback from stakeholders[1]
4. Capacity to offer reasonable accommodations and modifications as well as language access to ensure participation of individuals with limited English proficiency and physical, intellectual, developmental, and psychiatric disabilities
5. Ability to synthesize and communicate information through multiple formats that are accessible to youth and families from diverse backgrounds

**B. The Stakeholder Facilitation Process will consist of:**

1. The Stakeholder Facilitator will be responsible for soliciting, collecting, synthesizing, and communicating stakeholder input regarding the System Improvements in paragraphs 10, 11, and 12 of the Agreement: the Kinship Engagement Unit, Family Group Planning, and Referrals and Transitions. The Stakeholder Facilitator will also be responsible for developing recommendations for achieving these System Improvements based on stakeholder input.
2. This process will involve two stages. Stage 1 will consist of a 60-day initial process to gather input and develop recommendations to inform Defendants' draft Implementation Plan. Stage 2 will consist of a second 60-day process designed to evaluate system improvement and will be conducted following the issuance of the Monitor's initial report in 2024. The second stage will gather and report input from youth, families, and their advocates on implementation progress, areas of improvement, and adherence to trauma informed, LGBTQIA+ affirming, and culturally responsive practices in each SI program, along with any further recommendations for Defendants to implement.
3. The Stakeholder Facilitator will have discretion to determine how best to gather written and "live" or "real time" input from Washington youth, families, and stakeholders regarding the System Improvements in paragraphs 10, 11, and 12 but, at a minimum, will engage in the work described below.
4. The Stakeholder Facilitator will use an accessible method to gather written input of Washington youth with lived experience, such as through an online database.
5. The Stakeholder Facilitator will use an accessible method to gather written input of Washington families and stakeholders with foster care system experience, such as through conducting email/text/SMS surveys.

---

[1] Stakeholders include, but are not limited to, foster and extended families, tribes, community and service providers (child welfare, mental health, developmental disabilities, and housing), school liaisons, juvenile justice representatives, assigned counsel for youth and families in child welfare, and other youth and disability advocates. Diverse youth include, but are not limited to, youth who identify as being LGBTQIA+, youth who come from a variety of racial and ethnic backgrounds, youth with physical and neurodiversity, and youth from rural and frontier as well as urban areas of the state.

**Attachment A – Stakeholder Facilitator and Process Description**

6. The Stakeholder Facilitator will conduct at least 3 focus groups of Washington youth, families, tribes, and other stakeholders with foster care experience online and, if possible, in-person during the stakeholdering.  Youth, families, and stakeholders in all six DCYF regions will be invited to the focus groups to facilitate a geographical representation.

7. The Stakeholder Facilitator will have the opportunity to review and provide comments on the Draft Implementation Plan.

8. The parties will have the option of reviewing written feedback and survey data, and communicating ex parte with the Stakeholder Facilitator.

**C. The Stakeholder Facilitator's Report**

1. Within 60 days of the contract start date, or date of the Court's final approval of the Settlement Agreement, whichever is sooner, the Stakeholder Facilitator will issue a public report regarding the qualitative and quantitative data obtained from the Stage 1 stakeholdering process, including a summary of input and recommendations from the stakeholders.  The report will include a crosswalk section that synthesizes key recommendations for incorporation into the Implementation Plan.

2. DCYF will post this report on its website.

3. Defendants will issue a Draft Implementation Plan that includes its consideration of stakeholder input and recommendations, the extent to which the implementation plan follows stakeholder input and recommendations, and the reasons therefor.

4. Within 60 days after the Stage 2 stakeholdering process is concluded, the Stakeholder Facilitator will draft and issue a public report summarizing feedback from the Stage 2 process.  Stage 2 stakeholdering will be designed to target feedback from youth and families who have recently participated in the reforms described in paragraphs 10, 11, and 12 of the Agreement, as well as their advocates.